## Case No. 10,015.

### The NAPOLEON.

[Olc. 208.] [1]

District Court, S. D. New York. Oct., 1845.

SEAMEN—WAGES—PAYMENT—CONFLICT OF TESTIMONY—NUMERICAL PREPONDERANCE OF WITNESSES—JURISDICTION—FOREIGN VESSEL.

1. If, on the termination of a voyage, the master admits verbally that a balance of wages is due a mariner, and when sued therefor alleges, in his answer, that he has paid the amount in full

[1] [Reported by Edward R. Olcott, Esq.]

to him, it devolves upon the respondent to prove the payment.

2. When there is an irreconcilable conflict in the testimony of witnesses, and circumstances of suspicion attach to the credit of them on both sides, the balance of evidence will be regarded as in favor of the party having the greatest number.

3. The federal courts have jurisdiction of actions for wages for services on board foreign vessels.

4. These actions will be entertained of right in behalf of American seamen against foreign vessels, owners or masters; and will also be readily sustained in behalf of foreign seamen against masters or owners of foreign vessels, when the voyage terminates or is broken up in an American port, or foreign seamen are discharged from a foreign ship there, and are necessitous. But the courts are unwilling, under other circumstances, to support such actions, and discourage their prosecution in our tribunals.

[Cited in Davis v. Leslie, Case No. 3.639; The Hermine, Id. 6,409; The Lilian M. Vigus, Id. S.346; The Maggie Hammond, 9 Wall. (76 U. S.) 450; The Topsy, 44 Fed. 635.]

5. An allegation in the answer that all the parties are foreigners, and the ship is foreign property, must be proved by the respondent or claimant.

The libellant sues in a summary action for wages earned on board the brig Napoleon, on a voyage from New York to Jamaica and back, and avers that he is an American seaman, and was discharged on the arrival of the vessel at this port, September 5th, without payment of his wages. The answer asserts that the vessel is a British bottom, owned at the port of St. John, New Brunswick, and excepts to the jurisdiction of this court over the subject matter. It admits the shipping and services of the libellant as charged by him, and that the vessel returned to the port of New-York on or about the 3d day of September last, and avers that the libellant "was then paid off and discharged, the voyage being ended." The answer reiterates, in the form of denial, the same allegation, asserting that the libellant was not discharged without having been first paid the wages due him, "but on the contrary thereof, the fact was that he, at the time of his discharge, received from the respondent the full amount of wages due him," &c., and proceeds to state in detail the manner and amount of payment. The libellant filed a general replication to the answer, and both parties put in their proofs under the issue. Four witnesses, two on each side, were examined before a commissioner, and their depositions have been read, and three others have been examined orally in court.

Nash & Manchester, for libellant.

P. Hamilton, for claimant.

BETTS, District Judge. There is no direct proof of the discharge of the libellant, but it appears that he left the vessel on her arrival here; and no objection being shown to his so doing, although he was repeatedly afterwards at the vessel, it must be taken as admitted by the answer, that he was discharged on the 3d or 4th of September, the day the vessel came up to the city from quarantine. The mate deposes that the libellant's wages were paid him in full by the captain in the afternoon of Monday, the 8th of September, in the cabin of the vessel, the mate and captain's wife being also present. Collateral facts in proof fix this to have been the time when the libellant carried a pitcher of water into the cabin at the request of the mate. The mate testifies he did not pay the money himself, nor have it in his hands. That the captain took a twenty dollar bill out of his pocketbook, laid it on the table, and then handed it to the libellant. The mate had made up the libellant's account of wages, and found there was due him twenty dollars, deducting payments he had previously received. The whole wages in arrear at the time amounted to about twenty-two dollars. The respondent, before this action was brought, tendered the libellant two dollars in specie, and the tender not being accepted, paid the sum into court, setting up the tender in his answer. Daniel Dwyer, a seaman on board, deposes that the libellant told him, a day or two after that Monday, that he had received all his wages of the captain, except about a dollar and a half, which he was trying to obtain. This representation is contradicted by the libellant's proofs. A clerk in the office of J. W. Hallett, Esq., testifies that the libellant came to the office to have his demand collected. On Thursday, the 11th September, he left his account for $22, and the same day notice was sent the respondent from the office advising him thereof, and requesting payment of that sum. That the master came to the office the same day, accompanied by his mate, and brought the note with him. He said the wages had been paid the libellant in full the Saturday previous, in the afternoon, towards evening; that he did not pay the money himself, but it was paid by his mate. The mate said nothing. He was directly alongside the master at the time that statement was made. The Saturday after (13th) the master came again to the office, and then said that the libellant had come to the vessel Monday morning (8th) for his wages, and he himself then paid him in full. The answer was sworn to by the master on the 17th September, six days after the statements made at Mr. Hallett's office, in the presence of the mate, and to which the assent of the mate must be implied; and the discrepancy between the answer and the declarations made by the captain, and the after testimony of the mate, is of a character to excite strong suspicions against the integrity of these parties. The answer avers, in positive terms, that the vessel arrived here on or about the 3d of September, "when the libellant was paid off and discharged, the voyage being ended"; and to demonstrate that his attention was fixed to this connection of facts, and that he meant to make it emphatic, in the next article of his answer he repels, by a positive denial, an assertion in the libel,

sworn to the 15th September, "that he (libellant) had been discharged out of and from the services of said vessel without being paid the balance of wages due him, &c., amounting to twenty dollars and upwards," and avers the fact to be, on the contrary, that the libellant, at the time of his discharge, received from the respondent the full amount of his wages.

The main fact stated, that the wages had been paid before suit brought, would be sufficient, if proved, to bar the action, although the time or place of payment might not correspond with the allegations of the answer, and the court would not regard such variations as material. But these particulars become of significant importance toward determining between conflicting proofs, whether the alleged payment was ever made. Three witnesses for the libellant testify that they went with him to the vessel the 8th of September, to procure his wages; it was the Monday afternoon referred to by the mate. They identify the time, as he does, by the circumstance of the pitcher of water brought by the libellant to the cabin. All these witnesses swear that neither the captain or mate were present in the cabin with the libellant at that time, and that he merely carried the pitcher of water there, and came immediately out. The master and his wife were on deck. The mate was there, also, with a book in his hand; and it appears, from other evidence, the vessel was at the time discharging cargo. The witnesses all saw the libellant go up to the master and address him, as if making some inquiry, and two of them, Joyce and Young, testified that they were standing near him and heard him ask the master if he would settle with him or pay his wages; and the master replied he would pay him as soon as the cargo was discharged or out; and all the witnesses swear that no money was paid him that day by the master. These two witnesses state further that they went again with the libellant to the vessel on Tuesday and Wednesday following that day. Both assert that the master was not on board on Tuesday, and say that the libellant asked the mate when the master would pay his wages, and the mate replied he would not pay them until the cargo was out. Young says the mate made the like answer to the same inquiry on Wednesday, the master not being on board; but Joyce says it was the master, and not the mate, who made that answer on Wednesday. Three witnesses, Joyce, Peterson and Young, all swear that Daniel Dwyer came to the libellant's boarding-house on Sunday, (the 14th,) and inquired for the libellant, and then asked him if he had got his wages from the master. The libellant replied he had not. Dwyer then told him that he would not get them without suing the master, and if he (Dwyer) had his things ashore, he would not go in the vessel. Upon the main fact of payment

the two classes of witnesses stand in direct and positive contradiction with each other, and under circumstances which admit of no ground for supposing there is with them any mistake or forgetfulness in the matter. On the one side or the other, there is unequivocal perjury.

In considering the evidence to determine how the credibility preponderates upon that issue, the court cannot overlook the incongruity in some collateral particulars stated by the libellant's witnesses. Nor under circumstances awakening distrust as to the integrity and motives of the witnesses on each side, can it escape notice that the libellant and his witnesses are colored people, all lodging together, and that the keeper of this boarding-house has this suit chiefly under his own management and direction, and undoubtedly is to receive its proceeds. These circumstances afford color for suspicion of connivance between these parties, or at least that these witnesses have been brought to the stand strongly prepossessed for the libellant, and very much under the influence of their boarding-house keeper. These considerations would probably deserve weight beyond that of mere suspicion had the defense set up on the part of the respondent been ingenuous and consistent. The court might then feel compelled to disregard the fact of a greater number of witnesses on the part of the libellant, and decree conformably to the direct and positive testimony of the mate, corroborated by that of Dwyer, as to the admissions and declarations of the libellant. But the glaring discrepancy between the answer and the proofs, the confused and contradictory declarations of the master, in Mr. Hallett's office, the mate being present, and apparently assenting to the statements made by the master, and then testifying to one in direct opposition to them, in my judgment, tend to depreciate the reliableness of the defence quite as much as the disparaging circumstances bearing against the credibility of the libellant's witnesses do against the justness of the action.

In this confused and conflicting state of the testimony, the numerical superiority of witnesses with the libellant ought to be regarded as at least neutralizing the evidence of the respondent on this defence of payment. That the wages demanded had been earned, and were due to the libellant on the arrival of the vessel at this port, is admitted in substance by the answer. It devolves upon the respondent to discharge himself from that debt. The state of the pleading, as well as nature of the defence, casts the burthen of proving such satisfaction upon the respondent. It is always with the party who offers an affirmative fact in support of his case. Phelps v. Hartwell, 1 Mass. 71; Buckminster v. Perry, 4 Mass. 593. An answer alleging payment is of that character; it places the burthen of proof upon the respondent. The respondent is bound to maintain the allega-

tion by evidence clearly and satisfactorily overbalancing that of the demandant. It is not enough to do that for him to make out a probable case in his favor; he must render it reasonably certain.

Under this feature of the case, I shall decree that the libellant recover the wages claimed, together with summary costs, to be taxed. The two dollars deposited in court by the respondent is to be applied in part payment upon this decree. The exception taken to the jurisdiction of the court because of the foreign character of the vessel and her master, cannot prevail. It has not been proved that the libellant is an alien; and were it so, the law affords no exemption of foreigners or their vessels from the jurisdiction of this court. Nor if both parties were aliens would that fact affect the power of the court; it has cognizance of the subject matter, although, as a general usage, it forbears exercising its jurisdiction over controversies between foreign seamen and shipmasters. But it is no way probable it would withhold it in such case, when the suit is for wages by a seaman who had completed his contract and voyage, and was discharged from his vessel. Nor would its jurisdiction be denied in case the voyage was broken up in an American port, leaving the crew in a necessitous condition, with outstanding wages due them. Decree for the libellant.