## THE CHARLES L. JEFFREY.

### CARLETON et al. v. THE CHARLES L. JEFFREY.

#### (Circuit Court of Appeals, First Circuit. April 28, 1893.)

#### No. 29.

COLLISION—SCHOONERS—CROSSING COURSES—LIGHTS.

On a clear, cold night in March, with a fresh wind from the N. N. W., a collision occurred between the schooners Carleton and Jeffrey, the latter striking the former at right angles, just forward of the mainmast, on the starboard side, and sinking her. The Carleton was headed W. S. W., or nearly so, on the starboard tack, and making about nine knots, while the Jeffrey was on the port tack, heading about the opposite course, and running from seven to eight knots. The vessels sighted each other from one and a half to two miles apart. The Jeffrey was properly manned, and had a competent lookout. Her witnesses testified that they first saw the Carleton's red light nearly ahead, and the Jeffrey was kept off some three or four points under a port helm; that the red light disappeared, and the Carleton was then discovered about four points on their port bow, and crossing it, whereupon the Jeffrey's helm was put hard a-port, and in a short time she struck the Carleton. None of the witnesses saw any green light on the Carleton. The Carleton was manned by the captain at the wheel and the cook on lookout. They testified that they first saw the Jeffrey's green light about half a point on their weather bow, and that it continued to draw to windward until it was three points on their starboard hand. The cook admitted that after he went on lookout he spent some 10 or 15 minutes in trimming the sails, and that he also went below for a muffler. *Held,* that the Carleton was in fault for not having a sufficient green light, while the Jeffrey was free from blame, inasmuch as the Carleton's red light probably intersected to starboard, and misled her into the supposition that the Carleton was crossing to windward, when in fact she was drifting or sailing to leeward.

Appeal from the District Court of the United States for the District of Maine.

This was a libel in admiralty by Philander J. Carleton and others, owners of the schooner Joe Carleton, against the schooner Charles L. Jeffrey, Frank Harrington, claimant, for the loss of the former vessel by collision. The libel was dismissed, and libelants appeal. Affirmed.

Eugene P. Carver, (Edward E. Blodgett, on the brief,) for appellants.

Edward S. Dodge, for appellee.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

PUTNAM, Circuit Judge. This collision occurred between the two-masted schooner Joe Carleton and the three-masted schooner Charles L. Jeffrey, on the coast of Maine, near Monhegan, between 10 and 11 o'clock on a clear, starlight night in March, when the weather was so cold as to require great vigilance to keep a watch to its strict duty. The wind was N. N. W., and fresh or strong. The Joe Carleton was heading W. S. W., or nearly so, and the Charles L. Jeffrey the opposite course, or nearly so. No complaint is made of the lights of the Charles L. Jeffrey; but while it is admitted that the red light of the Joe Carleton was sufficient, it is claimed that her green light was dim, or had gone out, or for some reason was not visible. It is apparent that the vessels sighted each other at a distance of between one and one half and two miles; that the Joe Carleton was sailing about nine knots an hour, and the Charles L. Jeffrey between seven and eight knots, thus crossing the intervening space in about five minutes; that the Charles L. Jeffrey was running on the port tack, with a free wind, and the Joe Carleton on the starboard tack; that, therefore, it was the duty of the Joe Carleton to hold her course, and of the Charles L. Jeffrey to keep clear; and that the Charles L. Jeffrey collided with the Joe Carleton just forward of the main rigging on the starboard side of the latter at nearly a right angle, and with such force as to cause her to fill and sink within a short time.

It is plain that the deck of the Charles L. Jeffrey was fully manned by the mate's watch, joined also by the captain, thus including the captain, mate, man at the wheel, and a lookout. Everything about this vessel indicates a reasonable degree of vigilance, so that the probability that she complied with her duty under the law is prima facie established. On the other hand, the entire watch of the Joe Carleton consisted of the captain and steward, or cook, the latter testifying that, although he had followed the sea for 16 years, it had been mostly in the latter capacity. According to the testimony of both of these men, the captain relieved the cook at the wheel at or about 10 o'clock, and the cook then went on the lookout. The cook admits that after he went on the lookout he took about 10 or 15 minutes in clewing up the topsails and trimming down the staysail. Also he admits that at one time he went below for his muffler, and it is clear he does not remember distinctly whether this was before or after the captain relieved him from the wheel. If it was before, the case would not be helped, because, in that event, the captain, who had been forward while the cook was at the wheel, must have left the lookout, and temporarily relieved the cook.

Natural justice and good sense, as well as the settled practice of the admiralty courts, are not ordinarily satisfied with testimony touching contested issues of fact relating to the topics in dispute here, given by mariners who are so slack as these witnesses with reference to the cognate prime requirements of navigation. When one vessel makes a claim against another in the case of a collision, admiralty courts are bound by the same rule which forbids any other court from condemning any one in damages, except in behalf of

a party who supports his demand by a preponderance of evidence. If, therefore, as with the Joe Carleton, the owners of a vessel, either through the necessities of economy or for other reasons, are not able to show such constant vigilance, especially on the part of the lookout, as is necessary to sustain the burden which rests upon every one who claims another to be in fault, the inability to maintain the claim must be laid to their own misfortune or negligence, and not to the courts or to the law. Under the circumstances of this case, and applying the rule of evidence referred to, even if this court was not able to find by a preponderance of evidence that the Charles L. Jeffrey was free from fault, there is also lacking the like preponderance in favor of the claim that she was in fault, or that the Joe Carleton was fulfilling all the duties which the statute required of her; and therefore, for this reason alone, we would justly be compelled to affirm the decree of the district court, and dismiss the libel of the owners of the Joe Carlton, on the ground that the case of the latter was not proven to our satisfaction.

We are, however, able to go somewhat further, and indicate where we think the fault rests as between these two vessels. This case was heard in January, 1893. The court took the papers, and ordered a reargument, which was completed in April of the same year. At the original argument the proctor for the Charles L. Jeffrey claimed that when she sighted the Joe Carleton the side light of the latter vessel was first seen nearly ahead, and one or two miles distant; that the wheel of the Charles L. Jeffrey was thereupon put to port, and she was kept off three or four points, and would have avoided the other vessel by a superabundant margin; that, soon after, the red light of the Joe Carleton disappeared, and she showed no other light until the collision; that at the time when, and in the place where, the red light disappeared, the sails and hull of the Joe Carleton became visible about four points on the port bow of the Charles L. Jeffrey and about one quarter of a mile distant; that the wheel of the Charles L. Jeffrey was then put hard to port, and then it was seen that the Joe Carleton was running down across the bow of the Charles L. Jeffrey, and that in a short time the Charles L. Jeffrey struck the Joe Carleton on the starboard side, at nearly right angles. A diagram was introduced illustrating this theory. The court, however, was unable to accept all these propositions, and therefore ordered the case reargued.

The cook, who was acting as lookout of the Joe Carleton, testified that he first sighted the green light of the other vessel about half a point on his own weather or starboard bow, bringing, of course, green to green, and indicating either that the Joe Carleton was already to the leeward of the Charles L. Jeffrey, and running on a parallel course, or was crossing to the leeward. The captain of the Joe Carleton also testified to the same effect, but added that the green light of the Charles L. Jeffrey continued to draw on his weather bow, until it appeared on his starboard hand about three points, thus indicating that the Joe Carleton was going still further to the leeward. This might be, either if she was sailing on a

parallel course, as already suggested, or was drifting or crossing to the leeward.

On the other hand, the witnesses for the Charles L. Jeffrey testified that they first sighted the Joe Carleton nearly ahead, and saw then her red light. None of them testified to seeing her green light at the time she was first sighted, or ever after; and the captain and the lookout swore positively that they did not see it. All of the witnesses for the Charles L. Jeffrey stated that when they first saw the red light of the Joe Carleton it bore somewhat over their weather bow, except the captain, who testified that, although it was nearly ahead, it was just under his lee. It will thus be seen that his testimony agrees with that of the witnesses for the Joe Carleton in placing the latter vessel somewhat to his leeward, instead of dead ahead; although if, as he says, he saw only her red light, she had to him the appearance of running on a course crossing his to the windward, instead of to the leeward. We must, moreover, yield to the concurrent testimony from the Charles L. Jeffrey, and hold that the Joe Carleton failed to show a proper green light. Taking all the circumstances together, it is also probable, as is not uncommon in consequence of the way lights are set at times in the fore rigging, that her red light intersected somewhat to the starboard, so that, on the whole, the captain of the Charles L. Jeffrey was misled, without fault on his part, into the supposition that the Joe Carleton was crossing his course from her port to starboard hand, when in fact she was below him to the leeward, and either drifting or sailing still further in that direction.

Placing the Joe Carleton to the leeward, or running to the leeward or starboard hand of the Charles L. Jeffrey, it is easy to see that the Charles L. Jeffrey was deceived into not altering her own course to the leeward sufficiently or soon enough, and that thus, in connection with the subsequent change of course of the Joe Carleton, also to the leeward, immediately before the collision, the former vessel was unavoidably brought down upon the latter. The result would be the same, even if we should find that the Joe Carleton was in such position that the master of the other vessel should have seen both her lights, but, seeing only one, supposed she was working to the windward, when in fact she was nearly heading for him, but on his lee bow, where he and her witnesses place her, and drifting still more to the leeward.

The court, for reasons which it is not necessary to detail, has not been materially aided to reach a just conclusion by the attempts to prove alleged contradictory statements of some of the witnesses.

Decree of the district court affirmed.