THE GENERAL.

BROWNELL v. THE GENERAL.

(District Court, D. Rhode Island. September 29, 1897.)

No. 1,031.

1. COLLISION—WEIGHT OF EVIDENCE.
    The direct and positive testimony of the captain and pilot of a steamer that they were keeping a careful lookout, and saw no light on a sailing yacht with which they collided, and that neither the lookout at the bow or the quartermaster at the wheel discovered or reported a light, cannot be disregarded, in the absence of absolute inconsistency with the circumstances; and such testimony is a very strong circumstance in support of the contention that the yacht's light was obscured by her jib.

2. SAME—STEAMER AND SAIL—HOLDING COURSE.
    The rule that a sailing vessel shall hold her course on the approach of a steamer does not justify her master, on seeing a steamer a mile and a half away at night, in holding his vessel on an intersecting course, making no calculation as to a strong tide which is bearing him towards her, and giving her so little further attention that he first discovers her dangerous proximity on looking under his boom, and seeing her only 40 feet away.

This was a libel by Edward I. Brownell, owner of the sloop yacht Gypsy, against the steamer General, to recover damages resulting from a collision.

H. W. Hayes, for libelant.
C. A. Ives, for claimant.

BROWN, District Judge. This libel is for a collision between the small sloop yacht Gypsy and the steamer General, of the Newport & Wickford Line, shortly after 8 o'clock on the evening of August 5, 1896, in Narragansett Bay, at a point in the northern entrance to Newport Harbor, three or four hundred feet westerly of Coaster's Harbor Island. The yacht was approaching the harbor through the northern entrance on a course estimated as S. E. by S., with the wind on her port side a little abaft the beam. The steamer's course was N. by W., until, at a point about 400 feet westerly of Poor House Point, it was changed to N. Soon after this change the collision occurred, the yacht being struck on her starboard quarter, and considerably damaged. The important question in the case is whether the steamer General was in fault for failure to discover the green light of the Gypsy. The presence of the sloop was not known aboard the steamer until the steamer's headlight showed the sloop's mainsail at a distance of about 30 feet, and it was then too late for the steamer to keep clear. The fact that the lights of the sloop were burning is not conclusive evidence of the fault of the General in not observing them. If the evidence from the steamer is to be credited, she fully performed her duty of keeping a

careful lookout. Her captain and pilot testify that on the night of the collision unusual precautions were taken to discover small craft, as it was known that the yacht squadron in Newport Harbor would attract a large number of pleasure craft, and as the northern sky was darkened by an approaching thunder storm. In addition to the lookout at the bow on the saloon deck, the captain and pilot were in the wheel house, solely engaged in keeping a careful lookout, the quartermaster being at the wheel. Of these four persons no one discovered or reported a light or saw the sloop until they all simultaneously saw the sloop's mainsail by the steamer's headlight. This direct and positive testimony from persons whose calling and interest require constant diligence, as to their conduct upon an occasion that would naturally excite diligence, is entitled to great weight, and cannot be disregarded unless absolutely inconsistent with the circumstances. That four persons should have failed to see a light which, if visible, must have been nearly in their course for four or more minutes, is a very strong circumstance in support of the respondent's contention that the light was obscured by the jib of the yacht. The Daylight, 20 C. C. A. 81, 73 Fed. 878. The testimony from the sloop seems entirely consistent with the contention that the sloop's jib was full and obscured her starboard light, and inconsistent with the claim of the libelant that the jib was flattened.

As was said in The Charles L. Jeffrey, 5 U. S. App. 370, 5 C. C. A. 246, and 55 Fed. 685:

"When one vessel makes a claim against another in the case of a collision, admiralty courts are bound by the same rule which forbids any other court from condemning any one in damages, except in behalf of a party who supports his demand by a preponderance of evidence."

Finding no reason to discredit the testimony of the witnesses for the steamer as to their actual diligence, and the obscuration of the Gypsy's light being, under the circumstances, a reasonable explanation of their failure to observe it, I am of the opinion that the libelant has failed to establish by a preponderance of evidence any fault in the steamer.

The charge that the steamer did not perform her duty to stand by is fully met by the positive testimony that she did do so; and, although she declined the request to tow the sloop into Newport Harbor for the reason that there was danger of sinking her, she did stand by, ready to render assistance, until the sloop proceeded into the harbor under her jib. The burden of proof, therefore, is not cast upon the steamer by a failure to perform her duties arising after the collision. Nor am I satisfied that, but for a violation of her own duty, the sloop could not have avoided the collision. The sloop's owner was manifestly under a complete misapprehension of his own duty, and erroneously supposed that the duty of the steamer to keep clear relieved the sloop of her duty to keep a lookout. Though seeing the General brilliantly lighted at least a mile and a half away, he held his sloop on a course that intersected the usual path of the steamer, making no calculation upon the strong tide that was bearing him towards her, and paying so little attention to the rapidly approaching steamer that he first

discovered her dangerous proximity when, looking out under his boom, he saw her only 40 feet away.

In the case of The Sunnyside, 91 U. S. 208, 217, conduct in respect to the lookout similar to that of the owner of the Gypsy was characterized as negligence, manifest, culpable, and indefensible. In that case, after the light of a steamer was sighted, the mate said to the lookout that he guessed she would take care of herself, and no further attention was paid to her until she was so close that a collision could not be averted. Had the sloop immediately observed the steamer's change of course, she might have done her part to avoid the collision, as a slight departure from her course would have taken the sloop clear. Knowledge of the single rule that a steamer shall keep clear of a sailing vessel is by no means a complete guide for a sailing vessel approached by a steamer. Article 20 of the sailing rules provides:

"Nothing in these rules shall exonerate any ship, or the owner, master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of the neglect of any precaution which may be required by the ordinary practice of seamen or the special circumstances of the case."

The rule that a sailing vessel shall hold her course is a rule for the prevention of collisions, and "no vessel is justified, by a pertinacious adherence to a rule, for getting into a collision with a ship which she might have avoided." The Sunnyside, 91 U. S. 208, 217. The duties of approaching vessels are reciprocal, and, even if one vessel is clearly in fault, it is the duty of the other to use all means in her power to avert the danger, even under the condition of affairs unlawfully produced by the other's negligence.

So complete a disregard of the duty to observe an approaching vessel as existed in the present case was a grave fault, since it prevented the sloop from promptly learning that the steamer had not seen her, and was bearing down upon her, and prevented any effective action by the sloop based upon this knowledge. The libel is dismissed.