## ROSS v. MERCHANTS & MINERS TRANSP. CO.

(Circuit Court of Appeals, First Circuit.   October 19, 1900.)

### No. 335.

COLLISION—BURDEN OF PROOF—BARGES IMPROPERLY ANCHORED.
   The rule is strict in behalf of a vessel injured in collision while at anchor, where properly anchored; but there is no presumption in favor of barges which were unnecessarily anchored where they swung into and obstructed the narrow channel of a river, and were left there at night with no one to attend to their lights.   The D. H. Miller, 22 C. C. A. 597, 76 Fed. 877, distinguished.

Appeal from the District Court of the United States for the District of Rhode Island.

Edward G. Benedict (Robert D. Benedict and Dexter B. Potter, on the brief), for appellant.

Frank Healy (Archibald C. Matteson and Daniel H. Hayne, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and LOWELL, District Judge.

PUTNAM, Circuit Judge. We have no question that we must affirm the decision of the district court, and, except for the advisability of pointing out that the result harmonizes with our prior decisions, we would have no occasion to add anything to the opinion filed by the learned judge who decided the case below. 99 Fed. 793. The general facts are sufficiently stated in that opinion. The fundamental difficulty with the libelant's case is that, under the circumstances, the burden rests on him, and he does not support it. The case affords no presumption in his favor to be overcome by the Chatham, as is ordinarily the fact in behalf of a vessel at anchor. It is sufficient to say in this particular that the only direct proofs which the case furnishes show that at the time of the collision the libelant's barges were anchored in the fairway, or so near to it that some of them swung across it, and they also show that none exhibited any light. It is true that there is evidence that lights were set on at least one of the libelant's barges at 4 o'clock in the afternoon; but the record makes it plain that from about 6 o'clock until the collision, a period of over four hours, they were not attended by any person. In fact, it is admitted that there was no person in charge of the barges or their lights after 6 o'clock. The only proofs as to the want of lights and the position of the barges at the precise time of the collision come from the Chatham. It cannot be questioned that the Chatham was properly manned and well disciplined, and that, at least until the moment before the collision, she had been proceeding down the river with great caution, although it is true that there are some surmises- which, in a close case, would perhaps change the preponderance against her.

Applying to the facts the decisions which bear on them, especially those of this court, they are entirely in harmony with the conclusions of the district court. The libelant relies on The Bridgeport, 14 Wall. 116, 20 L. Ed. 787; but in that case the vessel injured was moored to a pier, and was altogether out of the usual course of vessels navigating. The next case he relies on is The Virginia Ehrman, 97 U. S. 309, 24 L. Ed. 890; but there the vessel injured was a dredge, anchored, with proper lights, and in the very place where she was required by the engineer in charge to do her work. This case was applied by us, in The D. H. Miller, 22 C. C. A. 597, 76 Fed. 877, to a dredge doing work, under the authority of the state of Massachusetts, in Boston Harbor, at a point inconveniently near the wharf of the colliding steamer. Then we laid down the rule as one of great strictness in behalf of a vessel properly at anchor; but this appeal differs from each of the last two cases cited, in the fact that there the vessels injured were dredges located at the places where it was necessary that they should be at work, while here the vessel injured was a barge, not engaged in work and of light draft, so that she could easily have been anchored under a bight of land, at some point clear from all possibility of endangering vessels proceeding up and down the channel. With reference to vessels at anchor, where properly anchored, the rule is strict in their behalf, but as to positions for anchoring there is no mystery. The same rules of obligation to use care (that is, to avoid endangering the usual paths of commerce) apply

as apply with reference to obstructing any other highway unnecessarily. The court below could not have been too severe in condemning the unnecessary and improper anchorage of these barges at a point endangering this narrow channel, in view of the fact that they were left through the night with no person to attend their lights, or to caution approaching vessels in case they swung into the channel, as it is clear they did.

Other cases which have been decided by this court are most pertinent to the facts at bar. In The Columbian, 41 C. C. A. 150, 100 Fed. 991, 997, we called attention to the well-settled rule which requires us to hold that, where it is clear that there are, on the one part, faults so gross as the faults of the barges in this case, any doubts regarding the management of the other vessel, or regarding the contribution of her faults, if any, to the collision, should be resolved in her favor. Also, at page 993, 100 Fed., and page 151, 41 C. C. A. we called attention to the rule that a violation of the statutory regulations, like the omission to maintain a light on the barges, will condemn the vessel thus negligent, unless it be shown, not merely that such violation was not one of the causes of the collision, but that it could not have been. In several cases we have also referred to the fact that the maintenance of good discipline aboard a vessel, and evident care in proceeding in difficult situations nearly to the time of a collision, justify a strong presumption that she was vigilant with reference to the immediate circumstances which brought on the catastrophe. A case strikingly in point, in view of the fact that the barges were left without any night watchman, is The Charles L. Jeffrey, 5 C. C. A. 246, 55 Fed. 685, in which we said, at pages 686, 687, 55 Fed., and page 247, 5 C. C. A., as follows:

"When one vessel makes a claim against another in the case of a collision, admiralty courts are bound by the same rule which forbids any other court from condemning any one in damages, except in behalf of a party who supports his demand by preponderance of evidence. If, therefore, the owners of a vessel, either through the necessities of economy or for other reasons, are not able to show such constant vigilance, especially on the part of the lookout, as is necessary to sustain the burden which rests upon every one who claims another to be in fault, inability to maintain the claim must be laid to their own misfortune and negligence, and not to the courts or the law."

In order for any one prosecuting to maintain his propositions successfully, he must not only have a good claim, but he must be able to furnish the appropriate proofs, or to point the court to presumptions which render proofs unnecessary. In the case at bar, we have seen, there are no such presumptions; and, if it were possible for us to suppose that the libelant has in fact a just cause, he must attribute his failure to maintain it to the principles stated in The Charles L. Jeffrey, and to the fact that, through an economical disregard of the rights of those navigating in the neighborhood of his barges, he failed to maintain a proper watch, who could have explained to the court the circumstances of the collision.

The decree of the district court is affirmed, and the costs of appeal are awarded to the appellee.