## THE BRAND.

### THE E. STARR JONES.

#### (District Court, E. D. Pennsylvania.  May 25, 1914.)

#### Nos. 53, 54.

COLLISION (§ 93*)—STEAMER AND SCHOONER CROSSING—SCREENING OF LIGHT BY SAILS.

A collision in Delaware Bay at night between a steamship and a schooner on crossing courses *held*, on the evidence, due solely to the fault of the schooner in permitting her green light to be screened by her sails so that it could not be seen from the steamship.  Both vessels *held* not in fault for changes of course immediately before collision.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 194, 195; Dec. Dig. § 93.*]

In Admiralty.  Suit for collision by H. L. Heyliger, master of the schooner E. Starr Jones, against the steamship Brand, with cross-suit by Edward Ballestad, master of the Brand, against the schooner.  Decree for cross-libelant.

Howard M. Long, of Philadelphia, Pa., for the E. Starr Jones.
Henry R. Edmunds, of Philadelphia, Pa., for the Brand.

BUFFINGTON, Circuit Judge.  These cross-libels concern a cross-course collision between the steamship Brand and the schooner E. Starr Jones.  While considerable testimony was taken, the case narrows to the question whether the schooner's green light was screened by her sails, or could be seen from the Brand.  If the green light was visible on the Brand, it was her duty as a steamer to yield to the schooner's right of way.  If, on the other hand, the schooner by her sails screened the light from the Brand, the schooner was at fault.  The Brand is a steel steamship of 1,500 tons register, 208 feet in length, and 37 feet beam.  On the morning of October 13, 1912, the Brand, with a heavy cargo aboard, entered Delaware Bay on her way to Chester, Pa., a port on the Delaware river.  Near Overfall's lightship she stopped and took on board a licensed pilot at 4:15, and, with lights properly set and burning, proceeded to Chester.  A competent seaman was on the lookout bridge, and the licensed pilot, the captain, first officer, and a competent wheelsman were on the main bridge.  The steamer's course was north by west, and her speed about eight knots.  The E. Starr Jones was a four-masted sailing vessel, 185 feet long, 38 feet beam, with a carrying capacity of 1,300 tons.  She was bound from Philadelphia to Porto Rico with a cargo of coal.  About 3:30 the same morning she cast off her tug, and under sail was putting out to sea at five to six knots.  Her course was southeast with the wind about north.  Her lights were burning and her lookout and crew in place.  While the vessels were thus converging toward the place of collision, the lookouts of each saw and reported the lights of a tug, with barges, going up the bay.  This tug the schooner says passed up on her starboard.  Thereafter the schooner saw the Brand's lights, and, relying on the Brand likewise seeing hers, she held her course until the vessels ap-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

proached so close to each other that they eventually collided. The testimony of the Brand's lookout is that no light was visible on the Jones, and the first thing he saw of her was when the sails showed up, and that she was then about 150 feet away; that the green light was not visible until after he saw the Jones' sails. The licensed pilot, the captain, and the first officer each corroborate the lookout, and say that, although all of them were watching for lights, the first seen of the Jones were her sails, and thereafter her green light.

We have carefully considered the testimony and have reached the conclusion, and so find the fact, that the schooner's green light was screened by her sails from the view of the Brand's lookout. The proofs show the green light of the schooner was of standard size, and could have been seen for two miles. There is nothing but conjecture to suggest that the Brand's people were remiss in their duty, while the circumstances were such as to warrant a belief that they were vigilant and attentive. They were all fresh on the watch; the pilot had just come aboard and set his course; they were entering an inland highway of commerce where they would expect other vessels; the captain was on the bridge; the first officer—whose watch it was—had given over the charge of the ship to the pilot, and he had nothing to do but watch. Altogether, the situation was one that would naturally require and suggest vigilance, and the testimony of these four men whose training, duty, and safety were calculated to inspire vigilance that each of them saw no light, is, in our judgment, strong proof that the light of the Jones was not visible. Moreover, the screening of a sailing vessel's light by her tackle under certain conditions of approach being a not unrecognized incident of navigation—see The General (D. C.) 82 Fed. 830; The Daylight, 73 Fed. 878, 20 C. C. A. 81—the positive testimony of these men is to our mind strong proof that the Jones' green light was hidden from view. Their testimony bears the marks of certainty, reasonableness, and truth. The fact that the tug which passed to the Jones' starboard just before the collision was seen, reported by the lookout, and independently seen on the bridge, show that the location from whence the Jones was coming was being scanned by these men. Moreover, the testimony of the wheelsman, as far as his duties at the wheel permitted him to observe, strengthens that of these other men. We also think the fact of the schooner changing her course just before the collision must not be overlooked, for this change would gradually tend to bring her green light into range.

By the testimony and the arguments, several other matters were raised. The schooner charges the Brand was at fault in hard-aporting just before the collision, and in not passing under the schooner's stern. On the other hand, the Brand asserts that if the schooner had not hard-astarboarded, but had kept on her course, or better yet, had hard-aported, the vessels would have cleared. In that regard we are of opinion, and so find, that neither vessel was, in view of the imminence of collision, in fault in the steps they severally took to avert it. The situation called for instant action, and neither took a course which misled or influenced the other vessel. We are also of opinion the contention of the schooner that the Brand failed in the statutory duty of standing to

after the accident is not justified. There was well-founded reason for the Brand, with her heavy cargo, taking no step until the hole in her side was stopped. Meanwhile, she signaled a pilot boat and sent her to the schooner. The word brought back showed, as the outcome proved, that the schooner had no need of the Brand's assistance.

In the view we take of this case, namely, that the Jones' green light actually was screened by her sails from the Brand, we have not felt called upon to pass on the contention of the Brand that the height, etc., of the Jones' light was improper.

In accordance with these views, let decrees be drawn sustaining the Brand's, and dismissing the Jones', libel.