## THE WISSAHICKON.

### (District Court, W. D. New York. June 5, 1915.)

1. NAVIGABLE WATERS ⬦≈24—OBSTRUCTION BY WRECK—DUTY OF OWNER TO MARK.

The statutory duty rests on the owner of a sunken vessel lying in the pathway of other vessels to plainly light or otherwise mark the position of the wreck, and navigators of other vessels fulfill their duty when they look for such lights, and cannot be held responsible for failing to see, or for running into, a wreck not so marked.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 66; Dec. Dig. ⬦≈24.]

2. NAVIGABLE WATERS ⬦≈24—FAILURE TO MARK POSITION OF WRECK—LIABILITY OF WRECKING CONTRACTOR AS BAILEE.

A contractor for raising a sunken vessel, although payment was contingent on success, became her bailee, with the duty of exercising ordinary care to protect her from injury by keeping her position properly marked; and where by reason of its failure to do so she was run into and injured by a passing vessel at night, the contractor is liable to the owner for the damages sustained.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 66; Dec. Dig. ⬦≈24.]

In Admiralty. Suit for collision by the Empire Engineering Corporation, owner of the steel dredge Pocantico, against the steamer Wissahickon, the Erie & Western Transportation Company, claimant, with the Reid Wrecking Company impleaded. Libel dismissed as against the steamer, but otherwise sustained.

Harrington, Bigham & Englar, of New York City, and Abbott & Abbott, of Buffalo, N. Y., for libelant.

Daniel H. Hayne, of Baltimore, Md., and Brown, Ely & Richards, of Buffalo, N. Y., for claimant.

Holding, Masten, Duncan & Leckie, of Cleveland, Ohio, and John K. White, of Buffalo, N. Y., for respondent.

HAZEL, District Judge. The steel dredge Pocantico, having an A-frame rigidly attached to her deck, sank in Lake Erie on June 11, 1913, about 2½ miles southwest from the Buffalo breakwater north end light,

and one-half mile east of Waverly Shoal gas buoy. She lay on the bottom in the pathway of vessels in about 43 feet of water, her A-frame projecting about 12 feet above the surface. On the night of August 30, 1913, at about 9 o'clock, the steamer Wissahickon, carrying a light load, her draft being 6 feet 8 inches forward and 14 feet 4 inches aft, and bound for Erie, Pa., ran over the sunken dredge, severely damaging her. Prior thereto the respondent, the Reid Wrecking Company, Limited, which has been brought into this case on petition of libelant, had been engaged for approximately seven weeks under a contract to raise the dredge and bring her into Buffalo harbor.. The liability of the Wissahickon is predicated upon the claim that proper lights were suspended at night upon the A-frame of the dredge to notify approaching vessels of her location, as required by Act March 3, 1899, and that the failure of the passing steamer to heed such warning lights renders her liable for the disaster. But the steamer by her answer denies that suitable lights marked the dredge, and in my judgment the evidence persuasively shows that neither by the use of lights nor otherwise was sufficient warning of the location of the dredge given to the steamer.

The burden of proof was on the Pocantico to show, not only suitable lighting of the wreck at night, but also negligent navigation on the part of the steamer. The Chatham (Ross v. Merchants' & Miners' Transp. Co.) 104 Fed. 302, 43 C. C. A. 538. This burden, however, has not been sustained. The wreck, which lay in the pathway of steamers was a menace to navigation, and should have been conspicuously marked, to the end that mishaps such as that under consideration might be avoided by the exercise of ordinary care. As was said by Judge Coxe in The Fred Schlesinger (D. C.) 71 Fed. 748:

"Regard for her own safety, as well as for the safety of others, should compel those responsible for her to make her presence known by plain and unmistakable signals."

Indeed, there are cases holding that failure to distinctly mark the location of a boat sunken in a channel or pathway of vessels renders the owner of such boat liable in rem for injuries sustained by vessels colliding with the wreck. The Macy, 170 Fed. 930, 96 C. C. A. 146; The Snark, [1900] Prob., Adm. & Divorce Division, 105; The Anna M. Fahy, 153 Fed. 866, 83 C. C. A. 48.

Testimony was introduced to show that it was customary for the respondent, the Reid Wrecking Company, to place lights on sunken boats while engaged in raising them, and that on the night of the mishap lights were displayed on the Pocantico. The witness Ashley, of the steamer J. W. Jenks, testified in substance that he left Buffalo breakwater at 8:20 p. m. on August 30th, taking his course from abreast the Richardson gas buoy in Lake Erie, and that he plainly saw, in addition to the Waverly Shoal light and the Richardson light, another light (red), which he assumed marked the spot where the Pocantico lay. But the master of the steamer Alleghany, which left the breakwater about ten minutes after the J. W. Jenks, testifying to the contrary, says that there was no light displayed on the A-frame of the sunken dredge when he passed her; that her beam was on his port bow, about 50 or 60 feet away; and that he would not have sighted it, had the deck lights

of the steamer not shone thereon. The witness Baine corroborated the statement that there were no lights on the dredge when the Alleghany passed.

Capt. Sparling of the tug Manistique, which was used in the work of raising the dredge, testified substantially that he left one red light and two bright lights on the Pocantico on the night of August 28th, but disclaimed the use of such lights to warn approaching vessels, stating that they were used simply to make it convenient to return to the dredge at night, as he did not consider it his duty to keep lights on the wreck as a warning to passing vessels. He further testified that from the shore he saw the lights burning on the dredge the next night, but he was uncertain as to whether they were burning on the night of the 30th. Capt. Reid and the witness Allen testified that they started for Erie on the tug Reid, which was also used in the work of raising the dredge, early on the morning of August 30th, passing the A-frame at about 4:30 o'clock, and that at that time the red light was burning.

There was, however, no testimony, save that of Capt. Ashley, to indicate a probability that there was a light on the A-frame at the time the Wissahickon passed. Capt. Delancy, who was on the pilot house, the mate, wheelsman, and Conners, the lookout, all of the Wissahickon, testified that there was no light of any kind to mark the place where the dredge was submerged. I was favorably impressed by the testimony, to which I have previously referred, of Capt. Cronkhite of the Alleghany, who also used the City Hall tower as a range, and, although his ship was owned by the owner of the Wissahickon, I am nevertheless of opinion that he gave credible testimony when he swore that there were no lights whatever on the A-frame of the wreck, notwithstanding Capt. Delancy's failure to so state in his report.

[1] Libelant next contends that the steamer was at fault for inattentiveness ahead, that if she had had a proper lookout she could have sighted the A-frame, even if unlighted, for it could have been seen a considerable distance, as the night, though dark, was clear; but this view is not justified by the elicited facts. I am unwilling to indulge in speculation as to whether the vision of some lookouts is clearer than that of others, or whether the night was such that the unlighted frame should have been sighted by a lookout exercising ordinary care. The libelant, as owner of the dredge, was charged with the statutory duty of lighting or marking the place where the Pocantico sank, and navigators fulfill their duty, I think, when they look for lights at night to mark obstructions in the pathway of vessels, and the dredge was in fault for failing to maintain such lights or marks as would have prevented the collision. To charge navigators with the responsibility of sighting unlighted or unmarked wrecks after dark, or to require them to bear in mind the exact location of such obstruction merely because they had been previously notified thereof, would not only be burdensome to them, but would put upon them a greater responsibility than the law requires.

[2] There were other reasons suggested by libelant's counsel for attributing contributory fault to the Wissahickon, but in my opinion she was not in any degree to blame; the sole fault for the collision, as

between the dredge and the Wissahickon, being that of the dredge, and there is nothing shown to excuse her. But how stands the case between the libelant and the Reid Wrecking Company, which in the performance of the work of raising the dredge became her bailee and qualified owner? In Second Pool Coal Co. v. People's Coal Company, 188 Fed. 892, 110 C. C. A. 526, affirming (D. C.) 181 Fed. 609, it was held that the respondent, which there had in its possession a coal boat owned by another and which had been allowed to sink, stood in the place of the owner, and was required to immediately mark the place, and maintain marks at that spot until she was removed or abandoned, and for omission to do so the respondent as bailee was held liable for injury to the vessel colliding with her. The principle of that case is applicable to the case at bar. If the respondent Wissahickon had brought suit against the Reid Wrecking Company as bailee for the injuries sustained by her in her collision with the dredge, she could no doubt have recovered on the facts presented by the record herein.

It appears that the libelant had informed the Reid Wrecking Company that, when it took possession of the dredge for the purpose of raising her, it would be expected to maintain a light on her, as libelant had previously done. In these circumstances it is difficult to see any adequate reason for relieving the Reid Wrecking Company from liability for failure to comply with the statute requiring the owner to mark the position of the wreck. The place where the dredge lay on the night of August 30th could be seen plainly from the mooring place of the tug Manistique, and verbal warning could have been given to passing vessels. Nor would it have been wholly impracticable to have anchored a tugboat near the wreck to give warning to vessels, if for any reason the light could not be maintained. Harrison v. Hughes (D. C.) 110 Fed. 550, affirmed 125 Fed. 860, 60 C. C. A. 442; The Mary S. Lewis (D. C.) 126 Fed. 848.

But it is contended that the contract for raising the dredge was inequitable, in that compensation depended upon a contingency, as there was to be no recovery for services unless they resulted in success, and that the contract did not specify that the Reid Wrecking Company should maintain a light. This defense, however, cannot be considered sound. The bailment, even though the compensation was uncertain, was quite as much for the benefit of the Reid Wrecking Company as of the Empire Engineering Company (Newhall v. Paige, 76 Mass. [10 Gray] 366); and, such being the fact, the bailee was bound to exercise ordinary care in relation to the property which was the subject of the bailment, and this it failed to do. 5 Cyc. 185; Story on Bailments (9th Ed.) 431; Lawson on Bailments, § 43.

My conclusion is that the libel must be dismissed as against the steamer Wissahickon, with costs, for the reason that the dredge was unlighted, and there was no negligence on the part of the steamer in failing to avoid her, and must be sustained, with costs, as against the additional respondent, the Reid Wrecking Company, for the reason that as bailee of the dredge it failed to exercise ordinary care in lighting the place where the dredge lay, or in giving warning to vessels

approaching her. The question of the ascertainment of damages and offset thereto, if any, will be left to a commissioner.

A decree may be entered.