## THE SMITH TERRY NO. 1.
### TUPPER v. HYDE.

District Court, S. D. Florida, at Jacksonville.
February 24, 1923.

No. 1069.

E. O. Locke, of Jacksonville, Fla., for libelant and cross-respondent.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, and Kay, Adams & Ragland, of Jacksonville, Fla., for claimant and cross-libelant.

CLAYTON, District Judge. Libelant sues for hire of a tug for towing a barge from Key West, Fla., to New Orleans, La., and back to Jacksonville, Fla. The rate of daily pay and terms are shown by the charter party in evidence. Respondent defends, and alleges that the tug was unfit for the service, and that, by unjustifiable delays, damages accrued, and they are demanded by a cross-libel. Libelant insists that the length of the voyage was caused by bad weather, which prevented normal progress, and necessitated remaining at times in ports of refuge.

■ Under the rule that admiralty courts determine the facts upon the principles governing trials by jury, where a preponderance of evidence is sufficient to establish the case alleged by the libelant, I find that the libelant has in the first instance made out its case, after having fully considered the charter contract and all the other evidence in the case. The Napoleon, 17 Fed. Cas. 1157, No. 10,015, Olc. 208; The Charles L. Jeffrey, 55 F. 685, 5 C. C. A. 246. The burden of establishing the defense is shifted to the respondent and cross-libelant. The duty thus imposed has not been met.

■ The respondent urges that bad weather did not prevent faster progress of the tug, and that the tug was unfit for the service for which it was employed. The evidence introduced by the libelant is more than persuasive that the vessel was seaworthy at the time it was engaged. The tug had recently towed as

large or larger tows than the one here, both on the Atlantic coast and in the Gulf. Besides, just before the services contracted for were undertaken, the vessel had been surveyed and certified to be in good condition. The respondent claims that there was no bad weather to prevent faster progress, had the tug been fit, and introduced in evidence reports from other vessels in the Gulf and from weather observing stations on shore at several other different points. In behalf of the libelant the testimony of the master and engineer of the tug and the master of the barge, and also the log books of both vessels, show that they encountered strong gales and heavy seas, which prevented the trip from being made in a shorter time, and that at different times the vessels were compelled to seek port, and to remain until the weather moderated and navigation became safe.

The testimony of the witnesses for the libelant was positive. I have no reason to believe that they testified falsely. It is not apparent that they had any interest in the outcome of the controversy. It does not seem that the master had any feeling of bias in behalf of the libelant. He is positive in his statement as to the weather conditions, and the danger the tow was in; the entries in both log books, made at the time, are to the same effect, and also positive. So I conclude that such direct and positive testimony cannot be overcome by reports of what other vessels, not in the immediate vicinity, experienced, or by the observations under the Weather Bureau taken on shore.

It is to be noted that, although the tow was a long time making the trip to New Orleans, for which delay cross-libelant claims damages, yet the cross-libelant immediately "rechartered," as he terms it, the same tug to tow the same barge back to Charleston, with full knowledge of the length of the trip just ended, and of the capacity or lack of capacity evidenced by the tug and its performance. So the conclusion is that, the libelant having proven the services rendered, and the cross-libelant having failed to sustain his contention, the libelant is entitled to a decree in accordance with the terms of the charter party.

The tug was in service of respondent from December 27, 1919, to February 29, 1920, namely, 65 days. Respondent claims a deduction of 2 days at Key West, December 30 and 31, at the beginning of the trip, which is allowed by libelant, whose charge commences January 1.

Respondent also claims a deduction of 2 days and 15 hours for unnecessary delay at Tampa. The undisputed testimony of witnesses, and the log books, establish the fact that the tow was compelled by stress of weather to seek that port, and remain there until the storm abated.

Deduction of 1 day and 9 hours is claimed for delay at Port Eades, but the delay was not caused by any fault of the tug, but as is shown by witnesses of respondent, was caused by local state pilotage rules and regulations.

Deduction of 9 days and 22 hours, and of 9 days and 2½ hours, for delay at St. Joseph's Bay, is claimed. The testimony is particularly explicit and strong as to the gale which compelled the seeking of that port, and as to the weather conditions which detained the tug and tow, up to the time of their attempted departure. It is uncontradicted, although cross-libelant examined a witness resident at that place. Libelant does not dispute a deduction of 9 days while making repairs.

Respondent claims a deduction of 4 days and 23 hours for delay at Key West; but the testimony is positive that the weather was such that no pilot would bring the barge into port sooner, and that during all the time they remained there the weather was too bad to go to sea, and other vessels were storm-bound at the same time and place. No testimony has been presented to contradict this.

A deduction is claimed for delay while making repairs between Key West and Jacksonville, and this is allowed.

It might be thought that the master was unnecessarily timid in seeking and remaining in port, but the logs of both masters show sufficient cause to justify a prudent master in exercising the discretion which the law authorizes him to use, and in such cases the master is the one to judge what is requisite for the safety of the property and the lives of the crews for which he is responsible.

The court, therefore, in view of the evidence, finds that libelant was entitled to receive pay for her tug at $350 per day for 65 days, namely, from December 27, 1919, to February 29, 1920, less a deduction of 2 days, December 30 and 31, at Key West, 9 days while repairing at Port St. Joe, and 1 day off Ormond, making a total of 53 days, at $350 a day, amounting to $18,500; that against this there is to be credited $1,050, paid to libelant for trip from Jacksonville to Key West, December 27, and of $8,000 paid at sundry dates subsequent, and $765 disbursed by respondent for a tug helping up the river to New Orleans.

Cross-libelant also claims certain money

for other disbursements, but no evidence, proofs, or vouchers for such payments have been put in evidence.

A decree will be entered in favor of libelant for $8,735; the libelant having on hearing, by permission of the court, amended the ad damnum in accordance with the testimony submitted, and the decree will be with interest at 8 per cent. per annum from March 1, 1920, the date of service of attachment and monition, with costs.