SECOND POOL COAL CO. v. PEOPLE'S COAL CO.†

(Circuit Court of Appeals, Third Circuit. June 23, 1911.)

No. 8.

1. NAVIGABLE WATERS (§ 24*)—OBSTRUCTION BY WRECK—LIABILITY FOR INJURY CAUSED TO OTHER VESSELS—"OWNER."

Respondent, a coal company, having in its possession a loaded coal flat moored to its float in the Allegheny river in Pittsburgh, with the right to retain it until it was unloaded, cast it loose during a flood to avoid

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied.

injury to its float and other vessels, and it sank some distance below. The place was not marked, and some three weeks later libelant's vessel ran into it and was injured. *Held*, that respondent stood in the place of the owner within the meaning of Act March 3, 1899, c. 425, § 15, 30 Stat. 1152 (U. S. Comp. St. 1901, p. 3543), requiring the owner of any vessel sunk in a navigable channel to immediately mark the place and maintain the marks until it is removed or abandoned, and, it appearing that there had been no abandonment, that respondent was liable to libelant for the injury to its vessel.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 66; Dec. Dig. § 24.*

For other definitions, see Words and Phrases, vol. 6, pp. 5134–5151; vol. 8, p. 7744.]

2. ADMIRALTY (§ 88*)—PLEADING—VARIANCE.
The rule obtains in admiralty, as in other cases, that the proof cannot avail a party further than it corresponds with the allegations of the pleadings, and that the decree must conform to the pleadings.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 627; Dec. Dig. § 88.*]

3. NOTICE (§ 14*)—PROOF OF NOTICE—TELEPHONE COMMUNICATIONS.
To establish notice by a telephone communication, the party relying upon such notice has the burden of establishing the identity of the person receiving the communication, and that it reached the party sought to be charged.

[Ed. Note.—For other cases, see Notice, Dec. Dig. § 14.*]

Appeal from the District Court of the United States for the Western District of Pennsylvania.

Suit in admiralty by the People's Coal Company against the Second Pool Coal Company. Decree for libelant (181 Fed. 609), and respondent appeals. Affirmed.

H. O. & B. H. Evans and Lowrie C. Barton, for appellant.
Reed, Smith, Shaw & Beal, for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

YOUNG, District Judge. The respondent, now the appellant, was engaged in the retail coal business upon the Allegheny river, and had in its possession a loaded flat of coal which it cut adrift from its float at Thirty-First street during high water to save such float and other boats. After being separated by respondent, it drifted a short distance down the river, and finally, on March 15, 1907, sunk in the channel of the river at Twenty-Fifth street, thereby obstructing navigation. Upon April 4, 1907, the libelant's now the appellee, steamboat W. C. Jutte, while proceeding down the river, ran upon the sunken flat and was damaged. The court below entered a decree against the respondent for the damage, and from this decree the present appeal was taken.

We approach the discussion of this case de novo because such is the rule in admiralty. The assignments of error raise the following questions: First. Was the respondent negligent in not marking the sunken flat? Second. Was the libelant guilty of contributory negligence?

[1] The first question suggests two inquiries: (a) What was the

---

obligation of the respondent as the person in possession of the flat?
(b) What was respondent's obligation to navigators as to the flat?

(a) Respondent, as shown by the evidence, was engaged in the retail coal business, and as such was accustomed to purchase the coal in flats, and, after unloading, to deliver the empty flat to the owner thereof. On March 15, 1907, the respondent being in possession of the flat in question, which had not yet been unloaded, finding the retention of the flat in the place where it then was to be dangerous to its float and other boats, turned it loose. There can be no doubt under this evidence that the respondent because of its purchase of the coal in the flat coupled as it was with the right to retain the flat until unloaded became the bailee of the flat until redelivered to the bailor, and that the respondent therefore and thereby stood in the place of the owner so far as the duty of preventing the flat from becoming an obstruction to navigation was concerned.

(b) The respondent being then the bailee of the flat, and it being its duty to safely keep it, the inquiry first arises whether the cutting of it loose made the respondent liable for the damage subsequently caused to the libelant. After careful examination of the evidence which shows that the flat was cut loose at the time when its retention because of the high water made it dangerous, we are satisfied that the conclusion of the learned judge of the District Court was correct, and that there was no negligence or want of care in cutting the flat adrift which would make the respondent liable; but, the respondent being in possession of the flat and having turned it adrift, was bound to see that it did not become a menace to navigation. Section 15, Act March 3, 1899, c. 425, 30 Stat. 1152 (U. S. Comp. St. 1901, p. 3543), provides:

"That it shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft, or to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels; or to float loose timber and logs, or to float what is known as sack rafts of timber and logs in streams or channels actually navigated by steamboats in such manner as to obstruct, impede or endanger navigation. And whenever a vessel, raft or other craft is wrecked or sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft and subject the same to removal by the United States as 'hereinafter provided for."

It clearly became the duty of the respondent under this statute until the sunken flat was removed or abandoned to properly mark the place where it was. But the respondent argues that it had abandoned the sunken flat. The evidence in this case clearly shows that the respondent had not abandoned the flat. In its answer filed the respondent alleged:

"That when respondent was informed that said flat boat was sunken in said river, it at once took all possible steps to designate its presence by a buoy

and have said obstruction removed, although it knew only by report that said obstruction was its flat boat; that it was impossible to remove said obstruction or designate its presence on account of said flood and high water; and that respondent used every effort so to do."

Under this allegation of the answer, evidence ought not to be received from respondent to contradict it. But the evidence submitted in the case very clearly shows that there never was any such abandonment by the defendant. We are clearly of the opinion that the respondent stood in the place of the owner as to the sunken flat, and was bound to either remove the obstruction or keep the same marked as required by the statute. The evidence also clearly shows that the injury to the libelant's boat was caused by the unmarked sunken flat, and this brings us to the consideration of the second question, viz., Was the libelant guilty of any negligence which contributed to the injury? This negligence is put by the respondent upon the following grounds: (a) The libelant's boat was not properly manned; (b) the sunken flat was known to the libelant; and (c) there were surface indications showing where the sunken flat was.

[2] (a) The evidence shows that Capt. Myers was at the wheel at the time of the accident, and it is now claimed that, because the evidence shows he was not at that time a licensed pilot for the Allegheny river, therefore the boat was not properly manned. The answer in this case did not raise any such defense. The rule obtains as well in admiralty as in other cases that the proof cannot avail a party further than it corresponds with the allegations of the pleadings. In The Rhode Island, 20 Fed. Cas. 648, No. 11,745, it was said:

"A cardinal principle in admiralty proceedings is that proofs cannot avail a party further than they are in correspondence with the allegations of his pleadings, and that the decree of the court must be in consonance with the pleadings and proofs. Wood, Civ. Law, 377; The Hoppet v. U. S., 7 Cranch, 389 [3 L. Ed. 380]; Treadwell v. Joseph, Fed. Cas. No. 14,157; Jenks v. Lewis, Fed. Cas. No. 7,280; The Wm. Harris, Fed. Cas. No. 17,695. Whatever may be the case then upon the evidence on the one side or the other, the judgment of the court must be restrained and guided by the allegations in issue; and, if they are insufficient to maintain the right of either party as established by the proofs, or the two stand in conflict, an amendment must be obtained, or the court will be compelled to pronounce its decision secundum allegata et probata, disregarding all evidence not brought within the fair and reasonable scope of the pleadings."

But the evidence in this case did show that Capt. Thomas was in charge of the boat, and had only left the wheel a moment before to go to his cabin. The evidence does not show that Capt. Myers was not a skilled pilot. He was a licensed pilot on the Ohio and Monongahela rivers, and had an application then pending for the Allegheny river. He knew the Allegheny river, had made trips upon it, and was acquainted with its channel. The learned District Judge was right in finding the boat was properly manned.

[3] (b) The sunken flat, it is alleged, was known to libelant. The evidence to sustain this proposition is not at all convincing. It consists only of the evidence of the lockkeeper that he had called the People's Coal Company, the libelant, on the telephone, and some one in the office had answered, and to this person he had communicated

the fact of the flat having been sunk in the channel. It does not appear who the person was who answered the telephone. It does not appear that the telephone communication was delivered to any employé or officer of the libelant. The evidence therefore of knowledge was not at all sufficient, and was entitled to but little weight. The rule as announced in Young v. Seattle Transfer Co., 33 Wash. 225, 74 Pac. 375, 63 L. R. A. 988, 99 Am. St. Rep. 942, as to telephone communications is sound. It is:

"To hold parties responsible for answers made by unidentified persons in response to a call at the telephone from their offices or places of business concerning their affairs opens the door for fraud and imposition and establishes a dangerous precedent which is not sanctioned by any rule of law or of ethics. A party relying or acting upon a communication of that character takes the risk of establishing the identity of the person conversing with him at the other end of the line."

(c) There were surface indications of the sunken flat. It clearly appears from the evidence that there were quite a number of swirls on the surface of the river in this part of the channel, the same being caused by holes made by the removal of sand from the bottom of the river. There is nothing in the evidence to show that these swirls caused by the sunken flat even if it existed on the surface of the river differed from the swirls made by the holes caused by the removal of the sand. Altogether the evidence on this branch of the case is most unsatisfactory.

We are clearly of the opinion that there was no error in the finding of the court, and that the judgment of the court and the decree should be sustained.