EASTERN   TRANSPORTATION   COMPANY   *v.*
UNITED   STATES   ET AL.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA

No. 57.   Argued December 7, 1926.—Decided January 3, 1927.

1. Abandonment within the thirty day period set by the Act of March 3, 1899, will not be presumed of a wreck left in a navigable

---

channel, for the purpose of relieving the owner from the consequence of failure to remove or mark it as that Act requires. P. 686.

2. The leaving of an unmarked wreck in a navigable channel, in a manner declared by the Act of March 3, 1899, to be unlawful, with resulting damage to another's vessel, is a maritime tort, which, when committed by the United States may be civilly remediable under the Suits in Admiralty Act, although also a crime under the Act of 1899. P. 687.

3. Under the Suits in Admiralty Act, March 9, 1920, which in lieu of earlier permission to proceed *in rem* against government merchant vessels and cargo, permits a libel *in personam* against the United States, with leave to the libelant to proceed in accordance with the principles of libels *in rem* whenever such a libel might have been maintained if the merchant vessel or cargo had been privately owned and possessed, and which provides also that election so to proceed " shall not preclude the libelant in any proper case from seeking relief *in personam* in the same suit," and that the United States shall be entitled to the benefit of all exemptions and limitations of liability accorded by law to the owners, charterers, operators, or agents of vessels—a libel *in personam* may be maintained against the United States to recover for the loss of a vessel and cargo resulting from the failure of the United States to remove or mark the wreck of a vessel, which, while owned and used by it as a merchant vessel, was sunk in a navigable channel. P. 692.

Reversed.

APPEAL from a decree of the District Court which dismissed, for lack of jurisdiction, an admiralty suit, *in personam*, brought by the appellant against the United States to recover for a ship and cargo, lost by collision with the sunken and unmarked wreck of what had been a vessel owned and used by the United States solely as a merchant vessel. The Seaboard Transportation Company, originally a co-defendant, was dismissed by consent of the other parties.

*Messrs. John M. Woolsey* and *Edward R. Baird, Jr.,* for appellant.

By the Suits in Admiralty Act the United States consented to be sued in any proceeding in admiralty in which such a proceeding could have been maintained against a

private shipowner. Through the Shipping Act of 1916 and Merchant Marine Act, 1920, the liabilities of government-owned merchant vessels were the same as those of privately owned merchant vessels. *The Lake Monroe,* 250 U. S. 246. After these Acts had been in operation for some time it was realized that it might be a serious inconvenience to the Government to have its vessels delayed by arrests and subject to the requirement that they give bonds as a condition of their release. This situation resulted in the passage of The Suits in Admiralty Act of March 9, 1920, which made government-owned vessels, when operated as merchant vessels or tugs, responsible on the same basis as if they were being operated by a private owner. The Act abolished the right to arrest Government vessels by proceedings *in rem* and allowed " a proceeding in admiralty " to be maintained against the United States by libel *in personam,* with the proviso that if the libelant wished so to elect it might proceed against the Government on the same principle as if the libel had been a libel *in rem,* and the ship had been arrested. But such election was not to preclude the libelant in any proper case from seeking relief *in personam* in the same suit.

It is clear from the language used that what was implicit in the Shipping Act of 1916 and the Merchant Marine Act of 1920, as to the legal status of the Government and of Government-owned or operated vessels whilst employed as merchant vessels was made explicit by the Suits in Admiralty Act; that under the Act " proceedings in Admiralty " were to be maintainable against the United States when its liability arose out of the operation of one of its vessels as a merchant vessel; and that by such proceedings all liabilities imposed by law on private persons similarly engaged could be claimed against the United States with correlative rights in the United States to avail itself of all defenses and limitations of liability available under admiralty law and practice to a private owner.

There is not any limitation on the phrase " proceeding in admiralty." It is not limited to a proceeding in admiralty *in rem,* which would mean a case where a maritime lien would have been created against the vessel in question if she were held responsible for the tort or breach of contract which might be involved in the case. Of course, when the proceeding could only be maintained *in rem* if the vessel were privately owned, and the owner of the vessel would not be liable *in personam,* then you have a situation such as existed in the case of *Blamberg Bros.* v. *United States,* 260 U. S. 452. What was really decided in the *Blamberg* case was, that the Suits in Admiralty Act did not authorize a suit *in personam* against the United States as a substitute for a libel *in rem* against a vessel, (a) when the vessel was not available in a port of the United States and subject to the process of our courts, because in such a case the vessel of a private owner could not have been arrested; and (b) when the private owner would not have been liable to personal suit.

The Suits in Admiralty Act constituted, therefore, a consent on the part of the United States to be sued in any admiralty proceeding in which a private owner would be liable provided the vessel through which the liability arose was operated as a merchant vessel. This is a recognition of the feeling frequently expressed that when the Government goes into business it should assume the same liabilities as others. *The Charkieh,* L. R. 4 A. & E. 59; *Walton* v. *United States,* 24 Ct. Cls. 372; *St. Louis* v. *United States,* 33 Ct. Cls. 251. There have been a number of decisions in the lower courts which sustain the libelant's position that an *in personam* action will lie against the United States under the Suits in Admiralty Act even if an *in rem* action, which must be founded on a maritime lien, would not be maintainable if the vessel in question were privately owned. *Middleton & Co.* v. *United States,* 273 Fed. 199; *The Elmac,* 285 Fed. 665;

*Agros Corp.* v. *United States,* 8 Fed. (2d) 84; *The Iso-nomia,* 285 Fed. 516; *Stevedoring Co.* v. *United States,* 286 Fed. 444; *The Anna E. Morse,* 287 Fed. 364; *Thompson* v. *United States,* 4 Fed. (2d) 412; *The Faraby,* 1923 A. M. C. 468; *The Tug Nonpareil,* 1924 A. M. C. 312; *The Castlewood,* 298 Fed. 184, 5 Fed. (2d) 1013; *The Brush,* 1926 A. M. C. 91; Benedict, Admiralty, 5th ed., § 1924.

Proceedings in admiralty may be based on maritime torts or on maritime contracts. If the Suits in Admiralty Act had intended to limit the Government's liability to " cases not sounding in tort," as was done in the Tucker Act, appropriate language would have been employed. An instance where the United States has been held liable for a maritime tort under the Suits in Admiralty Act is *The Tug Nonpareil,* 1924 A. M. C. 312.

A private owner would have been liable to the libelant for the damages caused by his leaving the wreck of *The Snug Harbor* unbuoyed and unlighted in a frequented fairway. At common law there was and is a liability on the part of a wreck sunk in navigable channels, and of its owner, for damage caused by the wreck to other vessels unless he shall have properly marked it or abandoned it. This common law liability has been fixed and emphasized by the statute of March 3, 1899, and the decisions thereunder. There is no presumption of abandonment.

The wreck of *The Snug Harbor* lay in a frequented fairway within waters over which both the District Courts for the Southern and the Eastern Districts of New York have concurrent jurisdiction.

*Mr. J. Frank Staley,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell, Assistant Attorney General Letts,* and *Mr. H. H. Rumble,* Attorney in the Department of Justice, were on the brief, for the United States.

Under the Act a vessel must have the status of a merchant vessel at the time the loss occurs. The *Snug Harbor* did not have such status at the time the *Winstead* struck her wreck, and she had become a total loss nine months before the libel was filed. We admit that, as between private parties, relief is properly had by libel *in personam* for failure to mark and buoy a wreck in navigable inland waters.

Four constructions of the Suits in Admiralty Act may be stated:

First, the Act substitutes a remedy *in personam* for the enforcement of the same liability which in the case of privately-owned vessels would be enforced by a proceeding *in rem*. *The Lake Monroe*, 250 U. S. 246; *Blamberg Bros. v. United States*, 260 U. S. 452; *Shewan & Sons v. United States*, 266 U. S. 108.

Second, the Act provides a remedy both upon principles of *in personam* liability and of *in rem* liability where the vessel involved at the time the cause of action arose was employed as a merchant vessel. Certain lower courts have so construed the Act. They reason that the language of § 2—" a proceeding in admiralty could be maintained "—should have this liberal construction. Citing many cases, and discussing *Agros Corp. v. United States*, 8 Fed. (2d) 84, and *The Isonomia*, 285 Fed. 516. These decisions suggest that the opinions of this Court in *Blamberg v. United States*, 260 U. S. 452; *Shewan & Sons v. United States*, 266 U. S. 108; and *Nahmeh v. United States*, 267 U. S. 122, must be limited to the questions presented. Each of the suits is based on *in rem* liability. The question in the first was whether an *in rem* suit would lie under the Act when the vessel was not within the United States; in the second, when the vessel was not " actually engaged in mercantile trade "; and in the third, when the vessel was not within the district in suit. The proviso of § 2, " that such vessel is employed as a merchant vessel," if the construction now suggested be sound, requires the cause of action, if based upon rights *in personam*, to be related

to the ownership, possession, or operation of a merchant vessel. At the time of the loss of the *Winstead,* the *Snug Harbor* had been sunk and totally lost and her identity as a vessel destroyed.

A third construction is that which the appellant here urges: That the Act permits suit against the Government on the admiralty side of the court, both *in personam* and *in rem,* in the same full measure that such actions are maintainable as between private parties. We deny such construction. The proviso—" provided that such vessel is employed as merchant vessel "—in plain terms, requires that the cause of action *in personam* be related to or grow out of the operation of government vessels employed as merchant vessels.

Fourth Construction. It has been suggested that the right to any relief under the Act is conditioned upon the vessel concerned having the status of a merchant vessel at the time the libel is filed and such vessel then being within the United States or its possessions. This libel was filed nine months after the *Snug Harbor* was lost. Upon such construction, relief under the Act has been denied. *Grace & Co.* v. *United States,* 8 Fed. (2d) 80; *Villigas* v. *United States,* 8 Fed. (2d) 300. It is to be observed it was not to enforce any liability of the wreck that the suit was brought. The gravamen of the complaint is the failure of the owner to mark the position of the wreck. No suit *in rem* against the wreck would have been possible. For such proceeding to be maintained, the court of admiralty must have the custody of the *res*—something of substance and value. In this case there was no *res.* In any view, the *Snug Harbor* then did not have the status of a merchant vessel.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

The Eastern Transportation Company filed a libel in admiralty *in personam* against the United States in the

District Court for the Eastern District of Virginia, under the Suits in Admiralty Act of 1920, and against the Seaboard·Transportation Company, as joint defendants. It averred that the libelant, a corporation of the State of Maryland, was the owner of the barge Winstead and the bailee of the cargo of the barge; that the Seaboard Transportation Company owned the tug Covington and the barge Pottsville; that on August 15, 1920, the steamship Snug Harbor, owned and used by the United States solely as a merchant vessel, while on a voyage from Baltimore, Maryland, to Portland, Maine, came into collision with the barge Pottsville in tow of the tug Covington, was sunk and became a total loss; that the wreck of the Snug Harbor lodged about 4¼ miles from Montauk Point in a frequented channel way within the harbors and inland waters of the United States; that it was not marked with a buoy or beacon by day or a lighted lantern by night; and was not removed by the United States or the Seaboard Transportation Company, and that no notice had been given or published advising mariners navigating the neighboring waters of the presence of the wreck; that the barge Winstead loaded with a full cargo of coal, on the 14th day of September, 1920, came into contact with the wreck and as a result was sunk, and it and its cargo became a total loss to the damage of the libelant in the sum of $105,000; that the collision between the Snug Harbor and the Pottsville was due to the negligence of both; that the collision of the Winstead with the wreck was without negligence of those engaged in her navigation, but was due to the unlawful presence of the wreck for which the respondents were jointly and severally responsible.

The United States District Attorney appeared specially for the Government, for the purpose of suggesting to the Court, that it was without jurisdiction so far as the United States was concerned; that the cause of action stated

related to a failure on the part of the officers and agents of the United States to perform a purely governmental function, or to the alleged negligence of such officers and agents in the performance of such a function, and created no liability on the part of the United States for which it was suable; that the cause of action in no way concerned a vessel employed as a merchant vessel; that the Suits in Admiralty Act was to prevent the arrest and detention of vessels owned or possessed by the United States then employed as merchant vessels, and it was only to prevent such arrest and detention and consequent interference with the operation of such vessels that the United States consented by the Act to be sued in respect to such vessels, and that the United States had never consented by the Act or otherwise to be sued in respect to a wreck or any object incapable of being employed as a merchant vessel; that the suit *in personam* provided for by the Act, was intended by Congress to be only a substitute for a suit *in rem* against such vessel itself, and by the terms of the Act could be brought and maintained only in cases where if such vessel were privately owned a suit *in rem* could be maintained against her at the time of the commencement of such action, and not then unless such vessel was employed as a merchant vessel at that time; that § 15 of the Act of March 3, 1899, making it the duty of the owner of any vessel or craft wrecked and sunk in a navigable channel immediately to mark it with a buoy or beacon by day and a lighted lantern at night, had no application to the United States of America, imposed no duty upon it, and created no liability for which it was suable in the District Court below or elsewhere.

This issue on jurisdiction was presented by a motion to dismiss, which was denied by the District Judge, on the ground that the question should be determined after the facts were elicited in the trial of the case. Subsequently the Judge reheard the suggestion of want of

jurisdiction and reached the conclusion on the facts alleged that the court was without jurisdiction and dismissed the libel.

The record shows that by consent of the other parties the Seaboard Transportation Company has been dismissed for reasons appearing to the court and to counsel. It further appears that all questions of mere venue are waived.

This appeal, upon a certificate of the District Judge that the dismissal had been solely for lack of jurisdiction, was brought directly to this Court on March 20, 1925, under § 238 of the Judicial Code, as it was before it was amended by the Act of February 13, 1925, in accordance with § 14 of that Act, c. 229, 43 Stat. 936.

The case before us turns on the proper construction of the Suits in Admiralty Act. It was approved March 9, 1920, ch. 95, 41 Stat. 525. Its first section provides that no vessel owned by the United States or by any corporation in which the United States or its representatives own the entire outstanding capital stock shall thereafter "in view of the provision herein made for libel *in personam* be subject to arrest or seizure by judicial process in the United States or its possessions."

By § 2 in cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action, a libel *in personam* may be brought against the United States if the vessel is employed as a merchant vessel. The suit is to be in a District Court of the United States for the district in which the parties suing reside, or at their principal place of business or in which the vessel or cargo charged with liability is found. The libelant is forthwith to serve a copy of his libel on the United States Attorney for such district and mail a copy thereof to the Attorney General, and make a sworn return of such service and

mailing, to constitute valid service on the United States and the corporation.

The third section provides that the suits shall proceed and be heard according to principles of law and to the rules of practice obtaining in like cases between private parties. A decree against the United States or such corporation may include costs of suit, and when the decree is for a money judgment, it shall include interest at the rate of 4 per cent. per annum until satisfied, or at any higher rate which shall be stipulated in any contract upon which such decree shall be based. Interest is to run as ordered by the court. The decrees are subject to appeal and revision as now provided in other cases of admiralty and maritime jurisdiction. Then follows this language:

" If the libelant so elects in his libel the suit may proceed in accordance with the principles of libels *in rem* wherever it shall appear that had the vessel or cargo been privately owned and possessed, a libel *in rem* might have been maintained. Election so to proceed shall not preclude the libelant in any proper case from seeking relief *in personam* in the same suit."

The United States is exempted from giving any bond, but it assumes liability to satisfy any decree in a cause in which a vessel of the United States has been arrested or in which a vessel previously possessed, owned or operated by the United States has been arrested, in which the United States is interested and of which it desires release as suggested by the Attorney General.

Section 6 directs that the United States shall be entitled to the benefits of all exemptions and of all limitations of liability accorded by law to the owners, charterers, operators or agents of vessels.

Section 7 provides that if any vessel or cargo of the United States is seized by process of a court of any country other than the United States, the Secretary of

State of the United States may, in his discretion, upon the request of the Attorney General, direct the proper United States consul to claim immunity from such suit and seizure and to execute a bond on behalf of the United States as the court may require for the release of the vessel or cargo.

Section 8 appropriates the sums needed to meet the final judgments against the United States authorized by the other sections of the Act.

In view of the fact that the wreck which did the damage was a total loss, we assume that there is no *res* upon which a recovery *in rem* could be based, and therefore that a suit as between private persons, if maintainable, must rest on the personal liability of the owner of the wreck and must be in principle *in personam* as distinguished from an action *in rem* against the vessel wrecked. Hence it is that the libelant must establish that, under the Suits in Admiralty Act, it was intended to give an action against the United States both in cases where the owner of the vessel would be personally liable, and in those where only the vessel would be liable.

The sovereignty of the United States raises a presumption against its suability, unless it is clearly shown; nor should a court enlarge its liability to suit beyond what the language requires. It was this view which led us in *Blamberg Bros.* v. *United States*, 260 U. S. 452, to hold that, as the substitution by the Suits in Admiralty Act was merely to furnish a balancing consideration for the immunity of the United States from seizure of its vessels employed as merchant vessels previously permitted, the Act did not apply in cases in which the seizure of a merchant vessel of the United States could not be prevented by the Act, in a foreign port and court, where the immunity declared by Congress could not be given effect.

In the case at bar, the liability charged in this libel arose from occurrences under the Act of March 3, 1899,

c. 425, 30 Stat. 1121, 1152, § 15. The Act is one making appropriations for the construction, repair, and preservation of certain public works and rivers and harbors, and contains regulations for the establishment of harbor lines and for the removal of obstructions in navigable waters of the United States.

Its § 15 provides, among other things, that whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, it shall be the duty of the owner of such sunken craft immediately to mark it with a buoy or beacon during the day and a lighted lantern at night and to maintain such marks until the sunken craft is removed or abandoned; that the neglect or failure of the said owner so to do shall be unlawful; that it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same and prosecute such removal diligently, and failure to do so shall be construed as an abandonment of such craft and subject the same to removal by the United States as thereinafter provided.

Section 16 provides for penalties of fine or imprisonment for the violation of § 15 as for a misdemeanor, or by both, and provides that the wrecked vessel may be proceeded against summarily by way of libel in any district court in the United States having jurisdiction.

Section 19 provides for a period of 30 days before abandonment is complete unless legally established in less time. Under the averments of the libel, there is no presumption of abandonment, certainly not within the 30 days, merely to relieve the owner of the wreck of his affirmative duty during that time to protect commerce against its danger. *People's Coal Co.* v. *Second Pool Coal Co.,* 181 Fed. 609, affirmed 188 Fed. 892. We do not think that abandonment is a factor in this case.

It is first objected to the recovery here that it was not intended by the Suits in Admiralty Act to subject the United States itself to prosecution for a crime which it

denounces in its legislation. We need not be troubled by this objection, because there is no attempt here to prosecute the United States or any of its agents criminally. The declaration that the leaving of a wreck in a navigable channel in a place dangerous to passing steamers without notice of the danger and without immediate removal is unlawful, makes such omission a maritime tort which, if merchant vessels of the United States are to respond in tort, may be recovered for in its admiralty courts against the United States without anomaly. *The Fahy,* 153 Fed. 866; *The Macy,* 170 Fed. 930; *People's Coal Company,* 181 Fed. 609, 188 Fed. 892. Under the Tucker Act and the general jurisdiction of the Court of Claims, of course, the United States is made liable only upon a contract express or implied, and not for a tort; but its liability provided for in the Suits in Admiralty Act can not be limited to contracts any more than the liability of its merchant vessels under the Shipping Act of 1916 could be so limited. *The Lake Monroe,* 250 U. S. 246.

By the Shipping Act of 1916, approved December 7, 1916, c. 451, 39 Stat. 729, the United States Shipping Board was established for the purpose of encouraging, developing and creating a naval auxiliary and naval reserve and a merchant marine to meet the requirements of the commerce of the United States, and authority was given to that Board to purchase, lease or charter vessels suitable as far as the commercial requirements of trade of the United States might permit. By § 9, any such vessel while employed solely as a merchant vessel was made subject to all laws, regulations and liabilities governing merchant vessels, when the United States was interested therein as owner in whole or in part, or otherwise. It was under this provision that vessels belonging to the United States engaged as merchant vessels were arrested and held in an action *in rem.* In *The Lake Monroe,* 250 U. S. 246, we decided that such a merchant vessel was subject

to judicial process in admiralty for the consequences of
a collision. It would seem clearly to follow that, under
the Act of 1916, if a wreck of a merchant vessel of the
United States in a navigable channel, not properly pro-
tected, caused damage to a vessel navigating the channel,
the owner of the latter would have a remedy *in rem*
against the wreck. Had the Suits in Admiralty Act not
been passed and had the wreck become a total loss, there
is nothing in the previous legislation, in the Act of 1916,
or elsewhere, by which the Government could be made
generally liable like a private owner for damages for
failure to protect vessels against the wreck under the Act
of 1899.

Did the Suits in Admiralty Act intend to extend and
expand the *in rem* liability so as to make the United
States so generally liable?

As we have already intimated, the main purpose of
the Act, of relieving United States merchant vessels from
seizure and arrest, would lead us to limit the operation of
the Act to such a remedy as would be commensurate only
with the immunity from seizure extended by the Act to
United States merchant vessels, and to a proceeding
which, while in form *in personam*, would be attended
only with the incidents of a proceeding *in rem* as if
against a vessel libeled, arrested, and released under a
stipulation or bond by the United States to pay all dam-
ages. In spite of the purpose of the Act to create a sub-
stitute for a suit *in rem*, however, we are forced to the
view by the language used in §§ 3 and 6 that it must be
construed to have a wider effect than that which its § 1
would lead us to expect. The second section declares
that in cases of immunity from arrest provided for in the
first section, where, if the vessel or cargo had been pri-
vately owned or possessed, a proceeding in admiralty
could be maintained at the commencement of the action,
a libel *in personam* may be brought against the United

States. The expression " a proceeding in admiralty " is broad enough to cover both a libel *in personam* and a libel *in rem;* but if that were all we could properly limit its scope, purpose and incidents to that of a suit *in rem* merely transmuted into the form of an action *in personam.* The third section, however, provides that if the libelant so elects in his libel, the suit may proceed in accordance with the principles of libels *in rem,* wherever it shall appear that had the vessel or cargo been privately owned or possessed, a libel *in rem* might have been maintained, but it then proceeds to say " But election so to proceed shall not preclude the libelant in any proper case from seeking relief *in personam* in the same suit." It is impossible to reconcile this language with the idea that the action provided for is one which in form only is *in personam* against the United States, but which in fact is one having the limitations, operation and result of a suit *in rem.* The words certainly assume that there may be proper cases under the Act in which there is to be a remedy really *in personam* against the United States, and also one in substance *in rem* against its vessels for which its own personal liability is substituted. We have heard no suggestion or hypothesis which satisfies the provision for this double remedy thus expressly given, which would not include the general *in personam* liability of the United States as the owner of an offending vessel, like that of a private owner.

This view is further borne out by the sixth section, which provides that the United States shall be entitled to the benefit of all exemptions and of all limitations of liability accorded by law to the owners, charterers, operators or agents of vessels. The necessary implication is that if, under the Harter Act (c. 105, 27 Stat. 445), or the Limitation of Liability Act, §§ 4282–4287, R. S., the United States as owner of a merchant vessel should not be able to show performance of the conditions upon

which such statutory limitations of liability are granted, it must assume the personal liability for negligence in such cases exactly as a private owner would.

This construction of §§ 2, 3 and 6 is sustained by the weight of authority in the lower courts. *Agros Corporation* v. *United States,* 8 Fed. (2d), 84; *The Anna E. Morse,* 287 Fed. 364; *Bashinsky Cotton Co.* v. *United States,* 8 Fed. (2d), 79; *Markle* v. *United States,* 8 Fed. (2d) 87; *Cross* v. *United States,* 8 Fed. (2d) 86; Benedict on Admiralty, 5th ed. vol. 1, § 194.

Do *Blamberg* v. *United States,* 260 U. S. 452; *Shewan & Sons* v. *United States,* 266 U. S. 108; and *Nahmeh* v. *United States,* 267 U. S. 122, militate against this view? In those cases the Court emphasized the main purpose in the Act to be to rid the United States of the inconvenience, to which it and its subordinate Shipping Corporations were subjected by having their vessels in the merchant trade arrested and seized under the Shipping Act of 1916, by substituting therefor a suit *in personam* against the United States with consequent appropriations to meet the liability thus imposed. We did not then have before us the question whether the statute substituted a remedy limited to what an action *in rem* would be with a statutory stipulation and bond of the United States to take the place of the vessel, or whether it created a broader personal obligation of the United States, both personal and *in rem,* like that of the private owner of a vessel. The question in the *Blamberg* case was whether the Act applied at all in cases in which there could be no immunity granted by Congress to vessels of the United States. The *Shewan* case only involved the question whether that which had been a merchant vessel of the United States continued to be such and satisfied the Act, if it were laid up and had not been changed to be a public vessel of the United States. The *Nahmeh* case was one of venue as to the district courts in which

suits could be brought under the Act, that is, whether only one of three courts described in the Act, or any one of the three could be used in each instance. Neither case involved the important question now before us; and while the emphasis placed in those cases upon the main purpose of the Act, as that of the mere substitution of a remedy for a proceeding *in rem* against merchant vessels of the United States, and its effect on its interpretation, may have been too marked, there is nothing in their decision inconsistent with the conclusion which we have here reached.

It is finally insisted for the Government that recovery against the Government under the Suits in Admiralty Act, whether *in personam* or *in rem,* must be on a cause of action related to or growing out of the operation of Government vessels employed as merchant vessels and that, as the collision with the wreck was not with a vessel employed as a merchant vessel, the Act does not apply. We think this reasoning to be too fine. What the statute means by saying " employed as a merchant vessel," is that the vessel shall belong to that class as distinguished from one employed in the governmental service—not necessarily that it shall be actively thus employed at the time of the collision. *Shewan & Sons v. United States, supra.* The cause of action grows out of the responsibility of the Government for a merchant vessel which in the course of its employment had become a danger to navigation and which imposed a duty to avoid that danger. A wreck which is a total loss will not furnish basis for an action *in rem,* as we have assumed; but if a proceeding in admiralty permitted by the Act embraces the principles both of suits *in personam* and suits *in rem,* it is a most natural construction of the Act dealing with merchant vessels employed by the United States, to include as a suit *in personam* it permits, one for a tort caused by the negligence of the United

States in dealing with a wreck of its merchant vessel and its failure to comply with its own navigation laws therewith.

The judgment of the District Court is reversed and the cause remanded for further proceedings.

*Reversed.*