**Ethics in Government Act of 1978, as Amended.**

**In re Franklyn C. NOFZIGER, Mark A. Bragg.**

**Div. No. 87–1.**

United States Court of Appeals, District of Columbia Circuit.

Feb. 14, 1992.

As Amended March 11, 1992.

Richard Ben–Veniste and Peter D. Isakoff, for petitioner, were on the Application for Attorneys' Fees and supporting documents.

Stuart M. Gerson, Asst. Atty. Gen., Patricia M. Bryan, Deputy Asst. Atty. Gen., William Kanter and Thomas M. Bondy, Attys., Dept. of Justice, filed Comments on the Application for Attorneys' Fees.

Before MacKINNON, Presiding, and BUTZNER and PELL, Senior Circuit Judges.

PER CURIAM:

This case involves a petition by Mark A. Bragg for reimbursement of his attorneys' fees incurred in defense of one count charging him as an aider and abettor to Franklyn C. Nofziger who was charged with violation of 18 U.S.C. § 207(c). Bragg was acquitted. The Special Division holds that it is without jurisdiction to award fees incurred during the trial and that petitioner does not satisfy the *but for* requirement of 28 U.S.C. § 593(f) for payment of fees incurred during the pre-indictment investigation.

## I. BACKGROUND

James C. McKay was appointed as Independent Counsel under the Ethics in Government Act, 28 U.S.C. § 591 *et seq.* (the "Ethics Act"), to investigate Franklyn C. Nofziger, former Assistant to the President for Political Affairs. Indictments were returned charging Nofziger with four counts of violating 18 U.S.C. § 207(c) (1982)[1] for making prohibited "communications" "to the department ... in which he [had] served as an officer...."[2] Count Two of the Indictment charged Nofziger with a violation of 18 U.S.C. § 207(c) (1982) and in the same count Mark A. Bragg, a partner of Nofziger in "Nofziger and Bragg Communications," was indicted under 18 U.S.C. § 2[3] for aiding and abetting the alleged communication offense by Nofziger.[4] Bragg was a private citizen who, except for military service, had never been employed by the government.

The trial resulted in the conviction of Nofziger on Counts One, Three and Four and in the acquittal of both Nofziger and Bragg on Count Two. On appeal the convictions of Nofziger were reversed on the ground that the indictments were invalid. *United States v. Nofziger*, 878 F.2d 442 (D.C.Cir.), *cert. denied*, 493 U.S. 1003, 110 S.Ct. 564, 107 L.Ed.2d 559 (1989). Subsequently both defendants, notwithstanding that they had been indicted, applied to the Special Division under the Act for reimbursement of their attorneys' fees incurred in the investigation and trial.

The Ethics Act provides *two requirements* for reimbursement of attorneys' fees; i.e., (1) that "no indictment is brought against ... the subject of the investigation," and (2) that reimbursement of "reasonable attorneys' fees ... [be limited to fees] incurred ... during that investigation which would not have been incurred *but for* the requirements of [the Ethics Act]." (Emphasis added).[5]

---

1. 18 U.S.C. § 207(c) (1982) provided:
   Whoever, [being a covered government employee], within one year after such employment has ceased, knowingly acts as agent or attorney for, or otherwise represents, anyone other than the United States in any formal or informal appearance before, or, with the intent to influence, makes any oral or written communication on behalf of anyone other than the United States, to—
   (1) the department or agency in which he served as an officer or employee, or any officer or employee thereof, and
   (2) in connection with any ... particular matter, and
   (3) which is pending before such department or agency or in which such department or agency has a direct and substantial interest—
   shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

2. Nofziger was also indicted in two counts for violating § 207(a). Those counts however were dismissed on motion of the Independent Counsel prior to trial.

3. § 2. Principals
   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
   (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

4. *See* Appendix for Count Two.

5. 28 U.S.C. § 593(f)(1) provides:
   (f) Attorneys' fees.—
   (1) Award of fees.—Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter. The division of the court shall notify the Attorney General of any request for attorneys' fees under this subsection.

■ On Nofziger's Fee Application the Special Division decided that the "no indictment" requirement of the statute was obviated by the invalid indictment, but that Nofziger failed to satisfy the second requirement, the "but for" requirement of the Act. Therefore, he was not entitled to reimbursement for his fees. *In re Nofziger*, 925 F.2d 428, *reh'g denied*, 938 F.2d 1397 (D.C.Cir.1991). The no-indictment ruling is equally applicable to Bragg.

This case involves Bragg's Application for Attorneys' Fees and Costs of (1) $105,507.26 incurred in post-indictment fees allegedly incurred during the *trial* and *pretrial* period from July 16, 1987 until February 11, 1988 when Bragg's trial concluded with his acquittal, and (2) $30,682.30 incurred in connection with the pre-indictment *investigation* conducted from January 1987 through July 16, 1987 when the indictment was returned.

## II. DISCUSSION

### A. *Post–Indictment Attorneys' Fees.*

■ Bragg's application includes a request for his trial and pretrial, i.e., post-indictment fees. The statute, however, only authorizes the Special Division to "award reimbursement for those reasonable attorneys' fees incurred by that individual during that *investigation*." (Emphasis added).[6] Since the statute only contemplated awarding reimbursement of fees if no indictment was brought, it follows that Congress never considered waiving sovereign immunity for the payment of any post-indictment attorneys' fees. The court is therefore without jurisdiction to award reimbursement of the $105,507.26 in trial and pre-trial attorneys' fees incurred after the *investigation* terminated upon the return of the indictment.

### 1. Waiver of Sovereign Immunity.

■ The right to recover attorneys' fees against the government is based on a waiver of the sovereign immunity of the United States and that waiver is strictly construed against the applicant and in favor of the sovereign. *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 2702, 69 L.Ed.2d 548 (1981) ("[T]his Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." (citations omitted)). We must strictly construe a waiver of sovereign immunity. *See United States v. Mottaz*, 476 U.S. 834, 851, 106 S.Ct. 2224, 2234, 90 L.Ed.2d 841 (1986) ("a waiver of sovereign immunity cannot be lightly implied" (citations omitted)); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951); *Eastern Transportation Co. v. United States*, 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927); *In re Nofziger*, 925 F.2d 428, 433 (D.C.Cir.1991); *In re Donovan*, 877 F.2d 982, 994 (D.C.Cir.1989); *In re Olson*, 884 F.2d 1415, 1428 (D.C.Cir.1989); *In re Jordan*, 745 F.2d 1574, 1576 (D.C.Cir.1984).

The attempt to enlarge the statute and authorize reimbursement of attorneys' fees beyond those incurred during the "investigation" also falls victim to the legal principle that "when a cause of action has been created by a statute which expressly provides the remedies for vindication of the cause other remedies should not readily be implied." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 720, 87 S.Ct. 1404, 1408, 18 L.Ed.2d 475 (1967) (a meticulous statutory remedy is exclusive of any other mandatory remedy); *United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979) ("Courts should not extend the waiver [of sovereign immunity] beyond that which Congress intended."); *Eastern Transp. Co. v. United States*, 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927) ("A Court [should not] enlarge [the Government's] liability to suit beyond what the language requires."); *Philip v. Nock*, 17 Wall. 460, 21 L.Ed. 679 (1873) (when the statute prescribes "actual damages sustained" the amount recoverable is "regulated by that standard"). Thus, we deny the

6. *See supra* n. 5.

petition for reimbursement of $105,507.26 in post-indictment fees and only consider the application for reimbursement of the $30,682.30 incurred pre-indictment during the "investigation" by Independent Counsel.

### B. Bragg's "Investigation" Fees.

1. Aiding and abetting the substantive offense.

■ With respect to his attorneys' fees incurred during the "investigation" Bragg contends that, notwithstanding the Special Division's denial of Nofziger's application for fees, his application stands on a different basis. Allegedly because in the absence of the Ethics Act he would not have been investigated and prosecuted by the Department of Justice because of his contention that he could not properly be charged under § 207(c) as he was not a former government official and only former government officials fall within the coverage of § 207(c).

It is correct that the specific statutory prohibitions of section 207(c) are limited to officers and employees covered by the Ethics Act[7] and that Bragg was not a covered officer or employee. However, he was not charged with violating section 207(c). He was charged, under 18 U.S.C. § 2,[8] with aiding and abetting Nofziger's violation of section 207(c); i.e., he was not charged under subsection (c) with making a prohibited "communication" but with aiding and abetting Nofziger to do so.

■ Bragg contends that section 207(c), which is applicable only to former government employees, could not legally be utilized against "aiders and abettors" who had never been government employees. Ben–Veniste Affidavit at 7. However, the law is well settled that one may be found guilty of aiding and abetting another individual in his violation of a statute that the aider and abettor could not be charged personally with violating. The leading case is Coffin v. United States, 156 U.S. 432,

447, 15 S.Ct. 394, 400, 39 L.Ed. 481 (1895). That case, decided years ago, held, that the offense of aiding or abetting officers of a national bank in violating a national bank statute, that only applied to bank officials, may be committed by persons who are not officers of the bank. The "every person" provision of the aiding and abetting section of the National Bank Act, as applied in Coffin, is substantially the same as section 2(a) of title 18 which applies to "[w]hoever ... aids or abets...." (Emphasis added). Compare Revised Stat. § 5209 at 1007 (2d Ed.1878) with 18 U.S.C. § 2(a) (65 Stat. 717).

The Ninth Circuit recently held to the same effect: United States v. Smith, 891 F.2d 703, 710–11 (9th Cir.1989), cert. denied, —— U.S. ——, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990) (though the Smiths who were not officers, agents or employees of a federally insured financial institution and could not be convicted of violating 18 U.S.C. § 1006, because the substantive offense can only be committed by an officer, agent or employee of an institution whose accounts are insured by the Federal Savings and Loan Insurance Corporation, the Smiths could be convicted under section 2 for aiding and abetting such violation).

The Third and Sixth Circuits have also reached the same conclusion: United States v. Standefer, 610 F.2d 1076, 1085 (3d Cir.1979) (en banc), aff'd, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) (the substantive criminal statute, accepting illegal gratuities as a public official, was limited to officers and employees of the United States, yet Standefer, a private citizen was properly indicted and convicted under 18 U.S.C. § 2 for aiding and abetting the public official to violate that statute); United States v. Lester, 363 F.2d 68, 72 (6th Cir.1966), cert. denied, 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967) (appellants as private persons were incapable of violating the substantive statute requiring action under "color of law," but they could

---

**7.** 18 U.S.C. § 207(c); 5 C.F.R. § 737.21(b) (1987). See Fee Application at 11 (pointing to this regulation and to the United States Attorneys' Manual's reference thereto).

**8.** See supra n. 2.

be found guilty of aiding and abetting a violation of that statute by an individual acting under "color of law"). *See also United States v. Snyder,* 14 F. 554, 556 (C.C.D.Minn.1882) (a defendant who is incompetent to commit the offense as principal by reason of not being of a particular [age, sex, condition or] class, [postmaster with authority to act "under color of law,"] may nevertheless "be punished as a procurer or abettor"); Revised Stat. § 5209 (2d ed. 1878). The doctrine is of ancient origin. *Regina v. Saunders,* 2 Plowd. 473 (1575).

### 2. *United States v. Nasser* and The Accomplice and Conspiracy Statutes.

Claiming reliance on *United States v. Nasser,* 476 F.2d 1111 (7th Cir.1973) petitioner contends that the regular application of 18 U.S.C. § 2 cannot apply here and that therefore the Department of Justice would not have prosecuted him as an aider and abettor. This contention misinterprets *Nasser* which merely holds that a former government employee, who subsequently represented a client in a matter in which the employee participated *while employed by the government,* in violation of subsection (a) of section 207 could not be doubly charged with a violation of subsection (a) *and* with conspiring under 18 U.S.C. § 371.

The decision in *Nasser* is based on "[t]he Wharton rule [which] operates to prevent conviction both of conspiracy and the substantive offense *where the substantive offense could not have been committed without concerted action,* so that the conspiracy is really identical with or included within the substantive offense." 476 F.2d at 1119 (emphasis added). *Nasser* is clearly distinguishable. Concerted action with a client was necessarily involved in Nasser's representation in violation of subsection (a), but Bragg as an aider and abettor was not a necessary party to Nofziger's violation of subsection (c). Thus, Nofziger's violation of subsection (c) could have been committed without concerted action or a violation of section 2 by Bragg. *Nasser* specifically states that 18 U.S.C. § 2 was *not* involved. *Id.* at 1120. Therefore, *Nasser* is inapposite.

### 3. The *Deaver* Assertion.

Bragg also contends that "Independent Counsel in the *Michael Deaver* case had previously concluded that aiding and abetting of a 207 violation would not lie." Ben–Veniste Affidavit, October 15, 1991 at 7. Whatever the effect may be of an opinion by an Independent Counsel in a prior investigation this interpretation by Bragg of the opinion of Independent Counsel in *Deaver* is erroneous. Bragg improperly compares Deaver's alleged violations of § 207(a) with Bragg's alleged violation of section 2. Under § 207(a) and (c), suppose that A, a person covered by subsection (a), induces B, a non-covered person, to commit what would be an offense for A as a covered person, but not for B as a non-covered person. Under such circumstances, no offense is committed as A does not violate the statute when he induces B to commit acts that would be an offense for him but not for B. Nor can A be indicted as an aider and abettor because no substantive crime was committed by B. That is what the Independent Counsel in *Deaver* was pointing out. One can rely on comparable cases, but one cannot base such reliance on inconsistent facts.

However, when A does violate the statute, as Nofziger was alleged to have done as a covered person under subsection (c), and B (Bragg) aids him, then Bragg may be charged as an aider and abettor to the principal offense committed by Nofziger— A. It is well established that there must be a guilty principal before a second party can be found to be an aider or abettor. *United States v. Raper,* 676 F.2d 841, 849 (D.C.Cir.1982).

### 4. Liability of Partners and Subsection (g) of Section 207.

Subsection (g) of section 207 applies to officers and employees of the executive branch and makes it a specific crime for a,

*partner* of an *officer or employee of the executive branch* ... to [act] as agent or attorney for any one other than the United States ... before any [federal] depart-

ment [or] agency ... in connection with any ... proceeding ... or other particular matter ... in which the [official] has participated personally and substantially. 18 U.S.C. § 207(g) (1988) (emphasis added).

From this provision Bragg illogically argues that since section 207(g) applies to partners, and section 207(c) does not, that therefore, as a partner of Nofziger, he should not be charged under 18 U.S.C. § 2 with aiding and abetting Nofziger's violation of section 207(c) since section 207(c) makes no reference to partners. Such argument is a non-sequitur.

There are two short answers to this contention. The first is that Bragg is charged with aiding a violation of 207(c) that applies to *former* government employees. Secondly, he could not be charged as a "partner" of Nofziger under subsection (g) because that subsection only applies to partners of government employees who are *currently* employed in government. Nofziger was *not* a government employee at the time Bragg aided and abetted Nofziger in the Welbilt matter.

That Congress in subsection (g) made it an offense for "partners" of executive branch officers or employees who were *serving* in government to act as agent or attorney in certain governmental matters, and did not prohibit partners of *former* government employees to act similarly is irrelevant. Congress is at liberty to define the elements of crimes as it sees fit. The inclusion of "partners" in subsection (g) and their exclusion in subsection (c) creates no immunity for partners who may aid or abet a violation of subsection (c). It was thus proper for Bragg to be charged under section 2 with aiding Nofziger in his alleged section 207(c) offense.

5. Aggravated Circumstances and Violations of Section 207(c).

An Office of Government Ethics regulation provides:

Departments and agencies have primary responsibility for the administrative enforcement of the post employment restrictions.found in the [Ethics in Government Act, *i.e.*, 18 U.S.C. § 207]. The Department of Justice may initiate criminal enforcement in cases involving *aggravated circumstances....*

5 C.F.R. § 737.1(c)(6) (1987) (emphasis added). Bragg contends that this regulation constitutes a Department of Justice prosecution policy that criminal violations of section 207(c) will be pursued only in "aggravated circumstances" and that his aiding and abetting Nofziger's § 207(c) offense did not satisfy the "aggravated circumstances" standard.

This regulation was promulgated by the Office of Government Ethics, not by the Department of Justice. Therefore, it does not constitute a prosecution policy of the Department of Justice. It merely provides that the Office of Government Ethics is to be responsible for the "*administrative* enforcement*" of the Ethics in Government Act and that the Department of Justice would "*initiate criminal enforcement in cases involving aggravated circumstances.*" *Id.* As a regulation of the Office of Government Ethics, it was intended to point out to violators that those cases that exceeded the civil jurisdiction of the Office of Government Ethics and constituted alleged crimes would be subject to prosecution by the Department of Justice.

Moreover, whether or not the Independent Counsel applied the regulation, the alleged offenses by Nofziger and Bragg did involve aggravated circumstances. *In re Nofziger*, 925 F.2d 428, 448 (D.C.Cir. 1991) (the alleged offense was "brash," and there was knowing conduct on Nofziger's part); 938 F.2d 1397, 1404-05 (D.C.Cir. 1991). As for knowledge attributable to Bragg, *see infra* p. 293. Nothing in the regulations of the Office of Government Ethics indicates that the Department of Justice was waiving its obligation to prosecute criminal offenses. The regulation merely recognizes the administrative function of the Office of Government Ethics to apply administrative sanctions for minor infractions. Bragg's contrary contention in this respect thus has no validity.

6. Position of Department of Justice.

The contention that, absent the Ethics Act, the Department of Justice would not

have presented the charges against Bragg is negated by the fact that Independent Counsel in this case consulted with the Department of Justice and senior personnel concurred in Independent Counsel's application of the statute to Bragg. *In re Nofziger*, 925 F.2d at 449.

> Senior career prosecutors within the Department concurred in the interpretation adopted by this Office and in the application of the facts to the law. There was a similar consultation with the Office of Government Ethics—an agency outside the Department of Justice established by Congress under the Ethics in Government Act of 1978.

Nofziger Final Report at 8. The Department of Justice also assisted in the drafting of the indictment against Bragg and their brief here states: "One cannot plausibly infer that, although Nofziger's fees would have been incurred absent the Ethics Act, Bragg's fees would not." Justice Department Brief at 3.

Moreover, nothing in the record supports Bragg's allegation that absent the Ethics Act he would not have been prosecuted. Such allegation is completely speculative, rests on mere conjecture and is without any support in the record, the statute or the regulations.

As for Bragg's "knowledge" it is clear that his personal contacts and negotiations with Nofziger and Jenkins, as stated in his Fee Application, at 6–10, constitute sufficient evidence to satisfy an *allegation* that he was "knowingly act[ing] as agent ..." for Welbilt "in a formal ... appearance before [and] with the intent to influence, and [caused to be made a] ... written communication on behalf of [one] other than the United States." 18 U.S.C. § 207(c). Bragg's participation in negotiations with Jenkins at the White House and his detailed directions to Denlinger with respect to the letter to be sent to Jenkins are sufficient evidence of such "knowledge of direct and substantial interest" of the White House before the letter was sent. But the knowledge factor is not vital to his claim since there is no showing that the

criminal law was being applied more harshly to him than to private citizens.

The Brief of the Department of Justice on this petition, and the Application of the Attorney General for an independent counsel, supports the conclusion that the requested investigation of Nofziger, and associated matter, conformed to the Department of Justice prosecution policies.

7. Comet Rice.

Petitioner asserts that he is entitled to fees

> incurred in connection with the portion of Independent Counsel's investigation which did not result in indictment [i.e., the Comet Rice investigation].

Bragg Memorandum at 14 n. 10.

However, there is no showing in this record that Bragg was investigated with respect to the Comet Rice matter. If he was, we can find no indication that any such investigation involved any extraordinary attorneys' services because of a stricter or more rigorous application of the criminal law than is regularly applied in prosecutorial investigations, or that would not have been incurred but for the requirements of the Act. *In re Nofziger*, 925 F.2d at 449. Therefore, this claim is denied.

C. *The "But For" Requirement for Reimbursement of Attorneys' Fees.*

■ The second requirement for reimbursement of attorneys' fees and costs is set forth in 28 U.S.C. § 593(f), *supra*. It requires proof that the "fees" would not have been incurred *"but for* the requirements of [the Act]." *Id.* (emphasis added). By this standard Congress intended that "covered officials will not be subjected to a more rigorous application of the criminal law than is applied to other citizens." S.Rep. No. 496, 97th Cong., 2d Sess. 19 (1982), U.S.Code Cong. & Admin.News 1978, pp. 3537, 3555. Congress has described this standard in various ways: " 'a more rigorous application of the criminal law'; 'a harsher standard'; 'a stricter application [or different standard] of criminal law.' " *In re Nofziger*, 925 F.2d at 444. The intent of the standard is "to correct an

unequal application of 'the criminal law,' when high public officials were investigated under the Act in circumstances where private citizens would not be investigated." *Id.* at 442. This court has already determined that the investigation of Nofziger did not apply a different standard of the criminal law, *id.* at 438–447, and there is no showing that a stricter or different standard of the criminal law was applied to Bragg than was applied to Nofziger or is applied to other citizens. Therefore, Bragg's failure to comply with the "but for" standard bars reimbursement of fees.

The record indicates that the investigation of Nofziger and Bragg was regular in all respects. From the beginning of the investigation to the end of the prosecution all matters proceeded at about the speed of the average major criminal proceeding of this type and magnitude in the District of Columbia. Independent Counsel conducted the entire proceeding in a manner that was "prompt, fair and not overzealous." 925 F.2d at 447. *See id.* at n. 28, for the regularity of proceedings. There is no showing that extraordinary expenditures were required of Bragg in the investigation brought about by the Act. The court has held that some increased costs in independent counsel investigations over normal investigations are inherent in the process, but these inherent costs are not reimbursable. Otherwise, fees would be paid in every case—but Congress indicated reimbursement of fees should only occur in "rare instances." *Id.* at 445; S.Rep. No. 496, 97th Cong., 2d Sess. 19 (1982).

■ That Bragg was acquitted has no bearing on his right to be awarded attorneys' fees since the statute limits attorneys' fees to subjects who have not been validly indicted. Congress thus never waived immunity with respect to fee claims where the subject of an independent counsel investigation was indicted and acquitted. *See supra* pp. 288–89.

Bragg's application makes no showing that distinguishes his attorneys' fees from those incurred in a *regular* grand jury investigation. Thus, Bragg's claim for reimbursement must fail as his fees were not incurred in an investigation involving a different standard of criminal law than is regularly applied to private citizens. Our system of criminal justice necessarily requires citizens to bear the costs of criminal investigations though they may eventually be absolved of criminal liability.

CONCLUSION

For all the reasons stated above Bragg's petition for reimbursement of his attorneys' fees is denied.

*Judgment accordingly.*

APPENDIX

COUNT TWO

AT ALL TIMES MATERIAL HEREIN:

1. The Grand Jury realleges and incorporates by reference in this Count paragraphs 1 through 7 of Count One.

2. On or about May 27, 1982, defendant BRAGG advised and directed defendant NOFZIGER to contact James E. Jenkins, who was then Deputy Counsellor to the President, for the purpose of influencing Jenkins on behalf of Welbilt in connection with the particular matter of the proposed Army engine contract.

3. On or about May 28, 1982, within one year after his employment as Assistant to the President had ceased and within the District of Columbia, defendant NOFZIGER, having been employed at a rate of pay of a covered person under the provisions of 18 U.S.C. §§ 207(c) and (d), with the intent to influence, made a written communication on behalf of Welbilt to James E. Jenkins, who was then Deputy Counsellor to the President and an officer and employee of the United States and of the White House. That written communication of Defendant NOFZIGER was made in connection with the particular matter of the proposed Army engine contract in which the White House then had a direct and substantial interest.

4. Defendant MARK A. BRAGG, within the District of Columbia and elsewhere, aided, abetted, counseled, induced, procured, and willfully caused defendant NOF-

ZIGER to commit the offense charged in paragraph three of this Count.

All in violation of 18 U.S.C. §§ 2 and 207(c).